In the Matter of the Application of EDWARD F. CROKER, Appellant, for a Peremptory Writ of Mandamus against THOMAS STURGIS, as Fire Commissioner of the City of New York, Respondent.

NEW YORK (CITY OF) — POWERS AND DUTIES OF FIRE COMMISSIONER OF — WHEN HE CANNOT REMOVE CHIEF OF FIRE DEPARTMENT — APPEAL INVOLVING NOTHING BUT QUESTION OF COSTS CANNOT BE ENTERTAINED. While the fire commissioner of the city of New York has, under the charter, the general management and direction of the fire department and power to remove the officers and employees thereof upon charges mentioned in the charter, he has no power to interfere with the specific powers and duties conferred upon and vested in the chief of the fire department by the charter, and has no power to relieve him from his duties or remove him from his position because he refused to continue a vacation granted to him, upon his own request; but the Court of Appeals cannot entertain an appeal from an order of the Appellate Division reversing an order of the Special Term directing that a peremptory writ of mandamus be issued requiring the fire commissioner to reinstate such chief of the fire department in the office from which he was thus removed, where, subsequently to commencing the proceeding for a mandamus, he had been removed from office upon charges preferred under the charter and had been paid his salary in full up to the time of such removal, so that the only right involved in the appeal, or capable of enforcement therein, is his right to collect the costs.

*Matter of Croker* v. *Sturgis*, 78 App. Div. 184, appeal dismissed.

(Argued April 29, 1903; decided May 12, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 15, 1903, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus to require the defendant to reinstate the petitioner in the office of chief of department and to the command of the uniformed force of the fire department of the city of New York. Also a motion by the respondent to dismiss the appeal.

The facts, so far as material, are stated in the opinion.

*John J. Delany* for appellant. The fire commissioner had no authority to suspend the relator; the power to remove an

officer only after charges made and heard does not imply the power to suspend him. (*People ex rel.* v. *Ransom,* 56 Barb. 514; L. 1901, ch. 466; *Gregory* v. *Mayor, etc.,* 113 N. Y. 416; *Emmet* v. *Mayor, etc.,* 128 N. Y. 117, 122; *Meyers* v. *Mayor, etc.,* 69 Hun, 291.) The order relieving the relator from the command of the uniformed force was a suspension from office. (*Fitzsimons* v. *City of Brooklyn,* 102 N. Y. 536; *Matter of Hathaway,* 71 N. Y. 238; *U. S.* v. *Hartwell,* 6 Wall. 385; *U. S.* v. *Germaine,* 99 U. S. 508.)

*George L. Rives, Corporation Counsel (Theodore Connoly and Terence Farley of counsel), for respondent.* In the exercise of his administrative jurisdiction the defendant had the power to make the order of August 19, 1902. (*Riley* v. *Mayor, etc.,* 96 N. Y. 331; *Morris* v. *Mayor, etc.,* 99 N. Y. 645; *Monroe* v. *Mayor, etc.,* 28 Hun, 258; *Moran* v. *McClearns,* 4 Lans. 288; *Wait* v. *Ray,* 67 N. Y. 36; *Hubbard* v. *Sadler,* 104 N. Y. 223; *Mayor* v. *Sands,* 105 N. Y. 210; *Vil. of Carthage* v. *Frederick,* 122 N. Y. 268; *Armstrong* v. *Vil. of Fort Edward,* 159 N. Y. 315; *Todd* v. *Birdsall,* 1 Cow. 260; *Marsh* v. *Chamberlain,* 2 Lans. 287; *Jackson* v. *Brown,* 5 Wend. 590.)

VANN, J. When this controversy arose Thomas Sturgis was fire commissioner of the city of New York, and authorized by statute to "exercise fully and exclusively all powers, and perform all duties for the government, management, maintenance, and direction of the fire department of the city, and the premises and property thereof." (Charter, § 724.) He was the head of the department which has the "sole and exclusive power and authority to extinguish fires in said city." (Id.) He had full power to provide supplies, horses and apparatus; to manage the buildings, property and appliances, and to organize his department into such bureaus as should be convenient and necessary for the performance of the duties imposed upon him. (Id. §§ 725-6-7.) He was authorized "to select heads of bureaus and assistants and as

many officers and firemen as may be necessary, and they" at all times were placed under his control and required to "perform such duties as may be assigned to them by him, under such names and titles as he may confer." (Id. § 728.)

These sweeping powers, however, were subject to the following express limitation : " One bureau," as the charter provides, " shall be charged with the duty of preventing and extinguishing fires and of protecting property from water used at fires, the principal officer of which shall be called the ' chief of department;' " and it is expressly provided " that assignments to duty and promotions in the uniformed force shall be made by the fire commissioner upon the recommendation of the chief of department, and in case any recommendation so made by the chief shall be rejected, he shall within three days, submit another name or names, and continue so to do until the assignment or promotion is made." (Id. §§ 727–8.) Subject to this limitation and some others of less importance not now material, the commissioner was in supreme control of the department, its officers, men, buildings and apparatus. The government and discipline of the department was confided to him with "power, in his discretion, on conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders, or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer or member or other breach of discipline, to punish the offending party, by reprimand, forfeiting and withholding pay for a specified time, or dismissal from the force * * *." Officers and members of the uniformed force can be removed, however, only after a public trial upon written charges after reasonable notice and an opportunity to defend. (Id. § 739.)

When this proceeding was instituted, Edward F. Croker held the office of chief of department and was the " principal officer " of the bureau charged with the duty of extinguishing fires and protecting property. It was a statutory office, mentioned *eo nomine* in the charter and had certain exclusive

powers and duties assigned to it.   He had the absolute right
to exercise the public function of recommending promotions
and assignments to duty, and except during his absence or
disability, no one else could exercise that function.   No
assignment or promotion could be made without his recom-
mendation.   In the discharge of that duty he was subject to
the order of no one, not even the commissioner.   Within the
narrow limits of this statutory power he was as independent
of control as the commissioner himself in his wide field.
While he could be removed from office by the commissioner
after a trial upon one of the charges mentioned in the statute,
he could not, at least until after charges had been preferred
against him, be deprived, even temporarily, of the right to
make the recommendation which was an essential prerequisite
to any assignment or promotion.   This statutory right was
part of his office, and he could not be deprived of it, directly
or indirectly, while he held the office.   The duties and func-
tions of the office, so far as they were prescribed by statute,
were exclusively his, and he had the right to perform them
without let or hindrance even of his superior officer, for any
period of time, whether long or short.   As to all duties
except those conferred upon him, exclusively, by statute he
was subject to the orders of the commissioner, but as to his
statutory duties he was subject only to the command of the
statute itself.   To this limited extent an attribute of sover-
eignty had been intrusted to him, which was inseparable from
the office and could be exercised only by the person who held
the office.

On the second of August, 1902, the fire commissioner and
the chief of department held their respective offices, with the
powers and duties belonging to each, which we have briefly
set forth.   On that day the commissioner upon the written
request of the chief of department granted him leave of
absence for a vacation of sixty days.   He was absent at his
summer residence until the 18th of August when he volun-
tarily returned to duty, assumed the functions of his office and
so reported to the commissioner, who, as he stated in an affi-

11

davit which appears in the record before us, " refused to allow him to perform his duty for the reason that his vacation had not expired. Upon his insisting that he be permitted to perform his duties and his refusal to continue his vacation, deponent (the commissioner), in the exercise of his administrative jurisdiction, relieved him from the command of the uniformed force, but ordered him to report to deponent for duty each Monday at ten o'clock." The order of the commissioner not only relieved Croker from command, but directed the deputy chief of department to " assume command of the uniformed force and perform all the duties of the Chief of Department until otherwise ordered." No charges were preferred against the officer, and while the reason given by the commissioner for his action was the refusal of the chief to continue his vacation, yet he was required to report for duty every week, and this was the only function or duty he had left. He was thus prevented from exercising the power given him by law by an order made in violation of law.

Croker obeyed the order, but, claiming it was in effect an indefinite suspension from office, demanded reinstatement, and when it was refused he applied to the Supreme Court at Special Term for a peremptory writ of mandamus requiring the commissioner to forthwith reinstate him in his office and " in the rights, duties and privileges " thereof. After a hearing the writ was issued, but upon appeal the Appellate Division reversed the order, as matter of right and not of discretion, and denied the motion. Two of the learned justices dissented and one concurred in the result upon a special ground. Thereupon Croker appealed to this court and a motion is now made to dismiss the appeal.

It appears from affidavits read upon the motion, that on the 24th of September, 1902, charges were preferred against the appellant as chief of department, alleging misconduct and dereliction of duty, and after a trial, he was convicted and removed from office. The order of dismissal was issued on the 28th of November, 1902, and took effect on the first of December following. He has been paid his salary in full until the

latter date and now has no pecuniary or other right involved in this appeal, except as to the costs awarded to him by the Special Term, amounting to $50, and to the costs awarded against him in the Appellate Division, amounting to $20, besides the disbursements in each court. Hence there is no right involved capable of enforcement, except the costs heretofore awarded, and we have uniformly held that relief from a judgment for costs merely is not adequate ground upon which to reverse a judgment, if the questions arising upon the merits have become obsolete by lapse of time. ( *Williams* v. *Montgomery*, 148 N. Y. 519 ; *People ex rel. Geer* v. *Common Council*, 82 N. Y. 575.) A reversal of the order of the Appellate Division would restore the order of the Special Term, which commanded the respondent to forthwith reinstate the appellant in the office of chief of department with all its powers and duties. This would reinstate the appellant in one proceeding, after he had been removed in a subsequent proceeding. Such an order could not be enforced, owing to the facts above stated, and the result is that the appellant could take nothing from his appeal, except relief from costs, which does not give the right to review, according to our established practice. We have no alternative, therefore, and must dismiss the appeal, but as the costs thereof are in our sound discretion, we withhold them from the respondent, because we think he had no power to even temporarily suspend the appellant, or prevent him from performing the statutory functions of his office. The commissioner, by attempting, even in the best of faith, to impose a compulsory vacation upon the chief of department, could not compel that officer to absent himself and thus prevent him from discharging a statutory duty. A vacation is a personal privilege that can be waived. Even if the health of the chief required a vacation he could refuse to take it and insist upon his right to remain and perform a duty imposed by statute. If by refusing to take needed rest or from any other cause, he became unable to act as chief, the commissioner, after a trial, could have removed him for that reason, but as long as he was chief, with no charges pending

against him, he could not be suspended for either a definite or indefinite period, and thus prevented from obeying the statute. While the commissioner could compel him to do his duty, he could not by an "administrative order," or in any other way, prevent him from doing his duty.

The appeal should be dismissed, but without costs.

PARKER, Ch. J., GRAY, O'BRIEN, CULLEN and WERNER, JJ., concur; BARTLETT, J., absent.

Appeal dismissed.