Jones, Appellant, v. Metropolitan Life Insurance Company.

Argued April 27, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*Samuel J. Goldstein,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY JAMES, J., November 15, 1944:

This is an action of assumpsit on a group life insurance policy issued by the defendant company, insuring employees of the McKeesport Tin Plate Company, and a certificate of insurance issued under the terms and conditions of the master policy to John W. Jones, an employee of the latter company, brought by Carrie L. Jones, the beneficiary and mother of the insured employee. The trial judge gave binding instructions for the defendant and subsequently refused plaintiff's motions for judgment n. o. v. and a new trial. Plaintiff appealed.

The certificate No. 3173 to John W. Jones, then 22 years of age, was issued July 27, 1935 in the sum of $1,000, payable "if death occur while the Employee is in the employ of the Employer, or within thirty-one (31) days after termination of employment and while the Group policy is in force ......"

The premiums for the employee's insurance were transmitted by said Tin Plate Company, under the plan, to defendant company each month, supposedly on the 20th, and were paid to cover insurance for the month of July, 1938. No premiums were paid after that time.

The insured, John W. Jones, stopped working July 30, 1938, because of pulmonary tuberculosis from which he died February 19, 1940, prior to his 65th birthday. Between those dates he was totally disabled and did not work. On his employee's record sheet appears the following notation: "7/30/38 Furloughed 2037"

On August 1, 1938, the McKeesport Tin Place Company, on an insurance company form, notified the insurance company of the names of employees whose "insurance is to be canceled ......" Upon this form, on a bracketed line, appears the following:

INSURANCE IS TO BE CANCELED ON THE FOLLOWING EMPLOYEES

| Certifi- cate Number | Full Name | Date Em- ployee Last Worked Mo. Day Yr. | Date Em- ployment Terminated or Cancela- tion Re- quested Mo. Day Yr. | Cause of Cancelation (Use Symbols) | Remarks |
|---|---|---|---|---|---|
| * * * | Gr. Policy 6940-G | | | | |
| * * * | * * * * * * * | * * * | * * * | * * * | |
| * * * | * * * * * * * | * * * | * * * | * * * | |
| 3173 | John W. Jones | 7  30  38 | 7  30  38 | 1-A | Clock #2087 |

1-A is evidently intended to refer to bracketed instructions appearing in the upper right-hand corner of this form, which are as follows:
"Indicate by symbol
the cause of cancelation

Termination of Employment:
(1-a) Discharged or resigned.
*(1-b) Temporary layoff or leave of
absence.
.*(1-c) Sickness or injury.
(1-d) Retirement.
(2)        Cancelation requested.

*IMPORTANT
Date to be canceled under (1-b) and (1-c) should include the period during which the insurance was kept in force by the employer in accordance with the contract."

A fellow employee testified that he and the insured went to the pay office at the mill two weeks to a month after John stopped working to see about John's insurance, when a clerk or officer, not identified, "went and looked at some papers and he came back and he said to him he said, 'Your insurance will be taken care of.' " He testified also as follows: "Q. Can you tell us whether or not the man in charge of the pay office in the mill knew anything about John's illness?" "A. Well, yes. He told him he was sick and he would take care of it. I don't know whether he judged that from his looks or whether he went by his furlough—I don't know which—but he said: 'You are sick. We will take care of you.' "

The evidence is clear, as stated by the court below that Jones quit work July 30, 1938, because of his sickness and that he was totally disabled from that time until he died February 19, 1940.

Prior to insured's application for insurance he had

read a booklet issued by the employer called "Announcement of Employee's Insurance Plan" giving details of what was offered, those who were eligible, how the benefits were payable and a series of questions and answers in relation to the plan. Appellant offered this announcement in evidence but it was rejected by the court below and its rejection is now assigned as one of the errors on this appeal.

The pertinent provisions of the Group Policy involved on this appeal are as follows:

"Discontinuance of Insurance

(a) The insurance on any Employee insured hereunder shall cease automatically thirty-one (31) days after the date of the termination of the employment of such Employee, except as provided in the second paragraph below.

Cessation of active work by an Employee shall be deemed to constitute the termination of his employment, except as provided in the next paragraph.

In the case of the absence of an Employee from active work on account of sickness or injury, or on account of retirement on pension, or for not longer than three (3) months on account of leave of absence or temporary lay-off, the employment of such Employee may, for the purposes of this Policy, be deemed to continue until terminated by the Employer. The insurance hereunder on such Employee shall cease thirty-one (31) days after the date of such termination by the Employer, as evidenced to the Company by the Employer, whether by notification or cessation of premium payment on account of the insurance hereunder of such Employee."

"Section 11. CONVERSION PRIVILEGE — Upon termination of employment of any Employee, all his insurance hereunder shall cease, in accordance with the Formula, and the said Employee shall be entitled to have issued to him by the Company, without evidence of insurability, and upon application made to the Com-

pany within thirty-one (31) days after such termination of employment, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then-attained age (nearest birthday), a policy of Life Insurance in any one of the forms customarily issued by the Company, except Term Insurance, in an amount equal to or, at the option of the Employee, less than the amount of his insurance under this Policy at the time of such termination."

"An individual policy so applied for shall become effective only upon the cessation of the insurance hereunder of the Employee so applying. The Company shall, upon the cessation of the insurance hereunder on any Employee because of termination of employment, be released from any liability on account of such Employee unless and until such individual policy is issued in accordance with the provisions of this Section, except as provided in Section 2 hereof."

The certificate recites a clause, in somewhat similar language, providing for conversion privileges upon termination of employment. The conversion privileges are made mandatory by the Act of April 26, 1929, P. L. 785, as amended by the Act of May 16, 1939, P. L. 144, 40 P. S. 532, Par. (d). The certificate contains a further clause, designated as Extended Death Benefits, which provides:

"Upon receipt by the Company of due notice and proof—in writing—that the death of an Employee formerly insured under the Group Policy has occurred prior to his sixty-fifth birthday and (a) within twelve (12) months from the date of termination of his employment or (b) within a period, beginning with the date of termination of employment, equal to the time during which the Life Insurance under the Group Policy on such Employee had been in force, whichever is less, and upon receipt of further proof—in writing—that

such Employee was, from the date of termination of his employment to the date of his death, continuously and totally disabled, as a result of bodily injury or disease, so as to have been thereby prevented from engaging in any and every business or occupation and from performing any and all work for compensation or profit, and upon the surrender of this Certificate and Certificate Riders, if any, attached hereto, the Company shall pay, subject to the Terms of the Group Policy, to the Beneficiary of record, the amount of insurance, if any, in force on account of such Employee at the date of the termination of his employment; provided, however, that no payment shall be made under the provisions of this Benefit unless such notice and proof of such death and of such disability is submitted to the Company within ninety (90) days after the date of such death; nor shall any such payment be made unless the Group Policy is in full force and effect at the date of the death of such Employee."

Under the terms of the Group Policy, the circumstance which ends the insurance coverage thirty-one days later is designated as "termination of employment". While the facts showing the termination of employment may vary, so that cessation from active work constitutes an immediate termination of employment, or in case of a leave of absence or a temporary lay-off, three months may expire before the employment is terminated, but when the absence is on account of sickness or injury, or retirement on pension, the employment may *never* be terminated and not until the event has occurred does the insurance lapse. It is significant then that although the policy clearly enunciates when termination transpires in the event of cessation from active work or a leave of absence or a temporary lay-off, in those cases where no time limitations forbid the employer from continuing the status of employment, namely, when sickness or injury exist, or the employee

is on pension, the contents of the term in question are not defined. Since the employer has the option to continue the employment indefinitely, some positive act clearly indicating the ending of employment must be necessary.

The term "termination of employment" is, used with apparently similar import in the two clauses entitled "Conversion Privilege" and "Discontinuance of Insurance." Its content in the latter clause has not as yet been judicially determined; its scope in the former proviso has been ascertained by this court. " . . . . . . the clause in the policy and certificate entitling the insured employee on the termination of his employment to have issued to him by the insurance company, on application made within thirty-one days after such termination, without evidence of insurability a policy of life insurance, etc. . . . . . . contemplates that an employer terminating the employment of an employee, by discharge, shall do so in such a way that the employee has notice or knowledge that his employment is terminated." *Ozanich v. Metropolitan Life Ins. Co.*, 119 Pa. Superior Ct. 52, 65, 180 A. 576. See *Poch v. Equit. Life Assur. Co.*, 343 Pa. 119, 22 A. (2d) 590. After all, provisos containing the privilege of converting within thirty-one days of the termination of employment, group insurance into any other form customarily issued by the insurance company are required by statute as a part of the standard group life insurance policy, Act of April 26, 1929, P. L. 785 §1, 40 P.S 532, in order to give some insurance protection to old or sick employees who are discharged for their poor physical condition at a time when they make hazardous insurance risks. To assure the employee of receiving the advantage conferred by the statute a duty is cast upon the employer to inform the employee clearly and unequivocally when his employment is being terminated to give him an opportunity to make a choice, file an applica-

tion, and ready the money. Undoubtedly, the policy uses the term in the same sense as the statute—the complete severance of occupational bonds by unmistakable notice to the employee. Similar considerations of justice call for notice to the employee when his certificate is ended by the termination of employment. Actually, the conversion privilege is timed to allow the converted insurance to go into effect at the moment when the group insurance certificate expires thirty-one days after the termination of employment. For the purposes of both provisos, until the employee is clearly informed that he is discharged, the employment relation is *not* terminated. Thus the contract is construed to operate fairly and justly as presumably the employer and the company intended. *McDonald v. Penn. Mut. Life Assur. Co.,* 122 Pa. Superior Ct. 288, 186 A. 234.

Had Jones ceased work voluntarily or had he been discharged he would, of course, know that employment terminated at once. Had he been granted a leave of absence or a temporary lay-off, the Group Insurance policy would have been a warning of a termination three months later. But on the record before us Jones' absence was attributable to sickness, when he could assume that the insurance would continue until advice of the termination of employment reached him. The testimony is barren of such subsequent advice.

In order to sustain the trial judge giving binding instructions in favor of the defendant we must decide that the use of the word "furloughed" on the employment sheet proved that a definite notice was given to the employee of the termination of his employment. The word "furloughed" is a rather unusual term to be applied to either the leaving of employment by the employee or the termination of his employment by the employer. The word is not found in the policy, the certificate, or the company's cancellation form. The latter provides for cancellation by discharge, resignation, temporary lay-off, leave of absence, sickness or injury, or retirement.

Furlough is usually used in granting a temporary leave of absence to one in the armed service of the country, or a governmental official or an employee. Like leave of absence, it indicates some voluntary act on the part of the employee, as contrasted with the phrase "lay-off" which contemplates action by the employer. Noting the similarity the trial judge concluded that furlough must therefore mean a leave of absence, and nothing else. The testimony, however, reveals that John W. Jones ceased active work not voluntarily, but under the compulsion of a total disability. That the employer had some notice of the assured's physical condition is obvious from what occurred at the pay master's office when the assured was advised by an employee that they knew he was sick and would be taken care of, and the circumstances under which Jones ceased active work. It may even be that the designation "furloughed" meant a suspension of any final determination of the assured's status on account of his condition. In this uncertain state it was for the jury to decide what the word signified to the minds of the employer and the employee. See *Grove v. Equit. Life Assur. Co.*, 336 Pa. 519, 9 A. (2d) 723. The court cannot, without more, give a conclusive construction to the term, and resolve furlough to be analogous to a leave of absence.

Nor can a termination of employment be conclusively inferred from the report submitted by the employer to the insurance company cancelling the certificate issued to Jones. For one thing, the classification given was 1-A, discharged or resigned. While a furlough might perhaps indicate a leave of absence, it is never commonly understood as a discharge or a resignation. It will be noted that when insurance is to be cancelled under 1-B (Temporary lay-off or leave of absence) or 1-C (sickness or injury) it is the duty of the employer to set forth the period during which the insurance was kept in force by the employer. This the employer failed to do. Obviously some discrepancy exists between the

employee's record sheet and the insurance company form which, traditionally, the jury and not the judge must clarify. Furthermore, the construction placed by the employer on the status of the employee "did not legally determine it." *Grove v. Equit. Life Assur. Co.,* supra at 525. The legally important question was not whether the employer thought that he gave notice of termination of employment, but rather whether the notice was in fact given.

The court below was persuaded that as assured had paid no premiums after July 30, 1938, the policy was ineffective at the date of assured's death. An examination of the Master Policy and Certificate discloses that the only clause which relates to the payment of premiums by the employee is found in the latter part of paragraph "b" under "Discontinuance of Insurance" as follows: "Failure of any employee to make contribution when due, as required by the employer, to the cost of his insurance hereunder shall be deemed notice to the employer that his insurance hereunder is to be discontinued."

To begin with we have no proof that the employer ever required contribution from this employee to the cost of his insurance during his period of disability and further, as we read this policy, when an employee was absent from active work on account of sickness or injury, or on account of retirement on pension, or for not longer than three (3) months on account of leave of absence, or temporary lay-off, contributions were not required to be made by the employee. Ordinarily the method of contribution by an employee under a group policy is by a deduction from his pay, which could not be done when he was not actively at work. Under the exceptions noted the policy continued in force without the payment of premiums, until the termination of the employment.

The only other statement in the record as to what the employee was to pay is found in the "Announce-

ment of Employee's Insurance Plan" which sets forth that the cost to the employee was $1.50 monthly, to be paid even during a period of illness. However, counsel for the insurer admits that since the passage of the Act of April 26, 1929, P. L. 785, as amended by the Act of May 16, 1939, P. L. 144, sec. 1, 40 P. S. 532, which provides that "No policy of group life insurance shall be issued ......unless it contains in substance the following provisions: ...... (b) a provision that the policy, the application of the employer, and the individual application, if any, of the employes insured, shall constitute the entire contract between the parties ......," the booklet is inadmissible to add to the provisions of the policy in favor of the insurance company. The act was passed to avoid the uncertainties and doubts which have arisen in the construction of group insurance policies, *Turley v. Hancock Mut. Life Insurance Co.*, 110 Pa. Superior Ct. 578, and to remedy the very difficulty we are facing.

Judgment reversed, and a new trial granted.