[Civ. No. 19407.   Second Dist., Div. Two.   Oct. 23, 1953.]

JULIUS A. JONES, Appellant, v. CALIFORNIA EMPLOY-
MENT STABILIZATION COMMISSION et al., De-
fendants; JAMES G. BRYANT, as Director of Employ-
ment et al., Respondents.

Victor C. Rose and Alfred M. Klein for Appellant.

Ralph H. Nutter, Jack R. Berger and Bodle & Landye as Amici Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, William L. Shaw and Vincent P. Lafferty, Deputy Attorneys General, Louis Lieber, Jr., Frederick E. Hines and John A. Dundas for Respondents.

FOX, J.—Petitioner was employed by Douglas Aircraft Company under a collective bargaining agreement between the company and the union. His services were terminated by Douglas on June 7, 1950, because of lack of work. The following day he registered with the Department of Employment for work and filed a claim for benefits under the California Unemployment Insurance Act. (3 Deering's Gen. Laws, Act 8780d.) The next day the Department of Employment ruled petitioner was ineligible for such benefits for June 8th and 9th upon the ground that he was not unemployed on those two days within the meaning of the act in that he was entitled to receive pro rata vacation pay from Douglas in the amount of $18.41, which was the equivalent of his wages for 12.6 hours of work at his hourly rate when he was laid off.

The employee appealed this decision to a referee of the Department of Employment. The referee held that the department's decision that the pro rata vacation pay was allocable to the two-day period, June 8th and 9th, was erroneous and that the employee was entitled to unemployment benefits for those two days. The employer thereupon appealed the referee's determination to the California Unemployment Insurance Appeals Board, which reversed the referee's decision and sustained the department's original ruling, holding the employee was ineligible for unemployment compensation benefits for June 8th and 9th, 1950.

Petitioner sought a writ of mandamus to set aside the decision of the appeals board and to compel the commission to accept as valid his claim for unemployment benefits commencing on June 8, 1950. The court refused to issue the writ and rendered judgment in favor of respondent. Petitioner appeals from this judgment.

Whether petitioner was eligible for unemployment benefits during the two days in question depends on an analysis of the applicable provisions of the act and of the collective bargain-

ing agreement. Section 9.2 of the act provides that an "individual shall be deemed unemployed in any week during which he performs no services and with respect to which no wages are payable to him." Admittedly no services were rendered by petitioner for Douglas on June 8 and 9, 1950, but petitioner did receive wages, for it is obvious that the vacation pay which he received constituted wages and was not a gratuity. The question is, however, whether such wages were payable "with respect to" this period.

Under the collective bargaining agreement employees are entitled to vacations with pay. Undoubtedly, for administrative convenience, the amount of annual vacation pay for all eligible employees is calculated as of the same date, viz., the Sunday immediately prior to May 1st of each year. This is known as the "computation date." The employees are all given their checks for vacation pay at one time which must be within 30 days after the computation date regardless of when, during that year, they may elect to take time off. This vacation pay is for a vacation period to be taken by the employee, if production requirements permit him to take time off and he elects so to do, during the twelve months following the computation date. Annual vacation pay is figured at 4 per cent of an employee's gross earnings during the year *prior* to the computation date.

If, however, an employee is laid off "through no fault or desire of his own," as was true in the instant case, he does not lose the vacation benefits which have been accumulating since the last computation date. Rather, he receives his pro-rata vacation pay, namely 4 per cent of his gross earnings since the last computation date, at the time of his layoff. Employees who quit or who are discharged for cause do not receive pro rata vacation pay.

Here we have a collective bargaining agreement which provides for "vacation pay," i. e., pay for a vacation. This is a term of common usage that is generally understood. Certainly the parties who negotiated this agreement must have understood it. There is no suggestion to the contrary. Thus, when they designated the checks which employees received immediately after the computation date as "vacation pay" they meant just that. Hence when an employee took time off during the 12 months following the computation date, as he was privileged to do if production requirements permitted, this extra check, based on his earnings for the previous year, constituted his wages "with respect to" such vacation period.

The services rendered during the previous year simply lay the foundation for the vacation pay and the opportunity to take time off during the following year. It is clear the parties did not intend that vacation pay should be allocated to the period in which the services were rendered or that such benefits should be received during that period. The entire pattern for vacation benefits under the agreement looks to the future. It contemplates that such benefits will be earned during one period but will be received and enjoyed during a later period. There is no provision in the agreement for an employee to realize his vacation benefits during the time he is earning them. He does not have the right to have 4 per cent added to his weekly paycheck as vacation pay nor to take off then an equivalent amount of time. To say that vacation benefits should be allocated to a period when they are not realizable is as illogical as it is contrary to the intent of the parties as expressed in their agreement.

Petitioner emphasizes the fact that an employee who is entitled to an annual vacation and receives a vacation paycheck following the computation date has the option of not taking time off during the succeeding 12 months. What the effect, if any, would be on the allocation of an employee's check for annual vacation pay if he elects not to take time off is not before us and has no bearing on the instant case since the agreement does not give an employee who is laid off because of lack of work any option relative to vacation or vacation pay. It simply provides that he shall be given pro rata "vacation pay" computed as of the date of termination in the same manner as annual vacation pay. So, one who is laid off does not lose the vacation benefits which have been accumulating since the last computation date and which he was not entitled to collect as he went along. The future and contingent character of such benefits is here further emphasized by the fact that an employee who quits or who is discharged for cause does not receive such pay. The pro rata vacation pay which petitioner received was earned in the same way that annual vacation pay was earned. It has the same characteristics. The parties have designated it also as "vacation pay." They must have meant it was for vacation. But petitioner could not realize upon his vacation pay while he was earning it, nor could he then take time off. He could only come into the realization of this benefit upon the happening of the specific condition, viz., that his services were terminated "through no fault or desire of his own." He was then entitled to the

money he had earned for his vacation which started immediately and continued until his vacation pay had been used up at his current hourly wage. ▊ Hence petitioner's vacation pay was paid "with respect to" such period, viz., June 8 and 9, 1950. Therefore he was not unemployed during those two days within the meaning of section 9.2 of the act and was ineligible. for unemployment benefits.

To hold that petitioner was entitled to both vacation pay and unemployment benefits for the period here in question would be requiring the employer to make two payments for the same period since the employer's reserve account with the Department of Employment would be charged as a result of the payment of unemployment benefits. There are situations under collective bargaining agreements where an employer is required to pay an employee double, or at least more than his usual wage, for a particular period. The basis for such payments is found in the express agreement of the parties. In the absence of such a provision in the instant agreement it would be unreasonable to say that the parties intended that an employee who was laid off because of lack of work should receive vacation pay and unemployment benefts at the same time. If they had intended such a result they should have so stated.

In support of our conclusion it is stated in 81 Corpus Juris Secundum, page 243, section 159, that "Unemployment compensation acts are generally construed not to permit the payment of unemployment benefits for the period during which the employee is on vacation and receiving compensation by way of vacation pay; during such period the employee, although not actually working, is deemed not to be unemployed within the meaning of the statutory provisions. This result is not affected by the fact that the vacation with pay is given in conjunction with a termination of the employee's services, so that the employee is not to return to his former employment after the vacation period." In an annotation on the right to unemployment compensation as affected by vacation pay in 30 American Law Reports (2d) 366, 368, the author states: "It has generally been held that even though one is unemployed during certain weeks, he is not entitled to unemployment benefits for those weeks if he is receiving, has received, or is eligible for, compensation in the nature of vacation pay for such weeks." It is also pointed out in this annotation (p. 368) that employees who receive vacation pay, based on a percentage of their earnings for the period pre-

ceding the vacations, are not entitled to unemployment compensation benefits even though the payment of the vacation allowance is not concurrent with the vacation period. This proposition is illustrated by *Kelly* v. *Administrator, Unemp. Comp. Act,* 136 Conn. 482 [72 A.2d 54]. There the collective bargaining agreement provided for two half-year periods, with vacation pay for each period equal to 4 per cent of the employee's gross earnings (as in the instant case) for the preceding six months, payment to be made within 21 days after the end of each six-month period. It also provided that the company could, if it chose, shut down the plant for vacation during the week in which July 4th fell. The company did this and some employees filed claims for unemployment benefits during that week. In denying these claims the court pointed out that the vacation pay these employees had received on June 21st, which was based on their gross earnings for the six-month period prior to June 1st, was clearly related to the vacation period for the week in which the fourth of July fell. See, also, *Grobe* v. *Board of Review of Dept. of Labor,* 409 Ill. 576 [101 N.E.2d 95].

The decision and reasoning in *Battaglia* v. *Board of Review,* 14 N.J.Super. 24 [81 A.2d 186], is particularly pertinent to the instant case. There plaintiff was employed by the Allied Textile Printers. He was laid off May 31, 1949. On June 30, 1949, he received from his employer a sum equivalent to 80 hours of pay under the terms of a collective bargaining agreement which provided for vacations, and provided, further, that workers who were laid off were entitled to the earned portion of the vacation pay. The check plaintiff received from his employer was the earned vacation pay. In denying plaintiff unemployment benefits for that period the court pointed out: "It is not every case of unemployment which entitles an unemployed person to benefits. The purpose of the act is to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own, until he can find employment or for the period stated in the statute, if he continues to be unemployed. It cannot be said that because one is unemployed during stated periods, he is entitled to benefits when he is receiving compensation by way of vacation pay for those periods."

In *Reid* v. *Board of Review, Bureau of Unemp. Comp.,* 155 Ohio St. 6 [97 N.E.2d 31], plaintiff was laid off and given a two weeks' paid vacation. Before the expiration of her vaca-

tion she filed an application for unemployment benefits. In denying her claim the court said since she was on a paid vacation she was, in effect, still employed and therefore ineligible for unemployment compensation.

Where plaintiff was not reemployed at the end of a two-week plant shutdown for vacations, but received vacation pay for the first week, it was held in *Consiglio* v. *Administrator, Unemp. Comp. Act*, 137 Conn. 693 [81 A.2d 351], that her employment terminated at the end of the week for which she received vacation pay, rather than at the date when she last worked, so far as determining her qualification for unemployment compensation was concerned.

An employee who had received unemployment compensation for the two weeks following his layoff from his job because of lack of work was denied compensation for the third week, during which the plant in which he was formerly employed was shut down for vacations, and for which week the employee received a check, under the vacation provision in the union agreement, equal to 2 per cent of his earnings for the preceding year, the court, in *Wellman* v. *Riley*, 95 N.H. 507 [67 A.2d 428], holding he was not eligible for unemployment benefits for that week since he received wages with respect thereto. The court rejected the employee's contentions that no wages were payable to him during this particular week since he performed no services during it and that his vacation pay was earned during his prior employment. It is true the payment to plaintiff was carried on the employer's books as ''wages'' for the particular week and was so designated on the check notwithstanding he had been laid off three weeks earlier. This was not done in the instant case but it was the practical effect of the transaction.

Petitioner emphasizes that his employment relationship with Douglas was completely severed and he was free to take other employment when he was laid off and therefore the vacation pay was not wages for the period immediately following. It is, of course, true that Douglas could no longer exercise any control over petitioner, but the termination of his services did not cut off rights which he had earned such as his seniority right to be recalled to work for two years after layoff or his pro rata vacation pay. ▮ Also, as stated in *Kelly* v. *Administrator, Unemp. Comp. Act, supra*, 55, ''One may be in the employ of another even though for the time being one is on vacation.''

■ As pointed out in *Chrysler Corp.* v. *California Emp. Stab. Com.*, 116 Cal.2d 8, 16 [253 P.2d 68], the fundamental purpose of unemployment insurance is to cushion the impact of such impersonal industrial blights as seasonal, cyclical and technological idleness, and thus to provide benefits to workers coming within the provisions of the act for unemployment not occasioned with their consent or brought about by their fault. ■ The payment, however, of unemployment benefits to a worker for a period of vacation with pay would not fulfill the purpose of the act. (*Grobe* v. *Board of Review, Dept. of Labor, supra,* p. 99; *Wellman* v. *Riley, supra,* 429-430.) The department of employment, the appeals board and the trial court fairly and correctly interpreted the agreement and the act, and arrived at a conclusion which is in harmony with the purpose of the act.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1953. Carter, J., was of the opinion that the petition should be granted.