[Civ. No. 28364. First Dist., Div. Two. Jan. 18, 1971.]

MARIA A. ABUD et al., Plaintiffs and Respondents, v.
DEPARTMENT OF EMPLOYMENT et al., Defendants and Appellants.

## COUNSEL

Thomas C. Lynch, Attorney General, and Roderick Walston, Deputy Attorney General, for Defendants and Appellants.

Brundage, Neyhart, Grodin & Beeson and Nancy Keane for Plaintiffs and Respondents.

## OPINION

**DAVID, J.**[*]—In 1967, the plaintiffs received payments from a "vacation fund," which the Unemployment Insurance Appeals Board (hereafter designated as the Board) held were wages which operated *pro tanto* to diminish the unemployment insurance payments which plaintiffs claimed, under Unemployment Insurance Code sections 1252 and 1279. Under Code of Civil Procedure section 1094.5, the trial court reviewed the transcript of the proceedings, taking no further evidence, and reversed the Board's ruling. Although the facts are not in dispute, the court purported to make findings, gave judgment for plaintiffs, and issued a peremptory writ of mandate to compel the payment of unemployment insurance payments, without deduction of payments made to the 250-plus plaintiffs from the "vacation fund."

The legal issue as we view it is whether the vacation fund payments made in June 1967 were wages chargeable to the work year 1966 in which service was rendered to qualify for them, rather than the period following time of payment. We conclude that under the undisputed facts and well-established law the trial court was in error and that the action of the Board should be sustained. Although questions of law are subject to judicial review, administrative interpretations of the act will be followed, unless they clearly are erroneous. (*Barrett* v. *Cal. Unemp. Ins. Appeals Bd.* (1961) 190 Cal.App.2d 854, 860 [12 Cal.Rptr. 356].) In this case, prior decisions as well as the administrative construction support the action of the Board.

The collective bargaining agreement between the garment industry union and employers provided for the contribution by the latter of percentages of gross payrolls to a "Bay Area ILGWU Vacation Fund." In the declaration of trust, the purpose was stated to be to establish the trust fund to provide and maintain pooled vacation benefits, as a "centralized, area-wide pooled vacation plan." Article III, section 1, provided that the vacation fund shall be used to defray the cost of providing vacation benefits. What the eligibility was to be for vacation payments was left entirely to the trustees. They were to determine annually on the first Monday of March, what the benefits should be and who were to receive them. The benefits themselves were payable solely from employer contributions during the preceding calendar year.

Neither the collective bargaining agreement nor the vacation trust fund agreement determines what the individual employer's plan or policies shall

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

be concerning vacations. No employer was a party before the Board or the trial court in this proceeding.

At their meeting in March 1967, the trustees determined that vacation fund payments would be made to each employee who had worked at least six months in the year 1966, and earned $250 or more, the vacation allowance to be 4 or 6 percent of his gross 1966 earnings based on his industry experience, with $6,800 being a maximum base.

The testimony of the fund administrators was that if an employee qualified under such criteria, payment was made without inquiry whether or not a vacation was actually taken, and that it likewise was immaterial whether he was then employed or had quit the industry. Although conceding that under Unemployment Insurance Code section 926 such payments are "wages," the plaintiffs assert that under Unemployment Insurance Code section 1252, such payments available to them on June 20, 1967 were not compensation "with respect to" the period after termination of their employment on or after that date when they sought unemployment insurance payments.

It was stipulated upon the hearing before the Board that employees in the industry do take time off from work for their personal pleasure or business, what is ordinarily called a vacation.[1] Concededly, employers in the industry do not provide and employees do not ask for vacations in the "peak season." If for example there was a vacation in March or April after the busy season, the employee would not then be paid for vacation by the employer because the checks payable from the vacation fund would not be available at that particular time. Of course, checks would be available after the payment date.

It appears that due to the seasonal nature of the garment industry nearly

---

[1]A vacation is a beneficient surcease from regular toil that a period of freedom, rest or diversion may be enjoyed by the employee, which benefits the employer in that he thereby may have a recuperated and better satisfied employee. It is a period of exemption from work granted as a personal privilege to each employee of an industry, business or profession. A "leave of absence" is an authorized absence from duty or employment, which may be granted for reasons other than rest or diversion. A "vacation" is thus a "leave of absence" but often is differentiated in that it is leave with pay. Both "vacation" and "leave of absence" imply continuity of the employer-employee relationship. A "layoff" likewise does not ipso facto terminate the relationship. It is a leave of absence or temporary suspension of service imposed by the employer, as contrasted with the "vacation" or "leave of absence" indicating some voluntary action on part of the employee. Consult generally: *Jones* v. *Metropolitan Life Ins. Co.,* 156 Pa. Super. 156 [39 A.2d 721, 725]; *Lord Mfg. Co.* v. *Nemenz,* 65 F. Supp. 711, 723; *Conner* v. *Phoenix Steel Corporation* (Del.) 249 A.2d 866, 869.

A vacation is a personal privilege, which may be waived. (*In re Croker,* 175 N.Y. 158, 163 [67 N.E. 307, 309].)

all, if not all, workers will be laid off from time to time, or will work partial weeks. Under such circumstances, it seems to be contemplated that vacations be taken in such slack time. If workers have been discharged, they still may receive the vacation payment.

Due to the seasonal layoffs, employees may not specifically seek time off for vacations; and having had time off in layoffs, may take the vacation money although at that moment they may be working, without asking for specific vacation time.

The ultimate conclusion of the trial court (No. 1) that the vacation payments were wages payable in respect to the work in the period of work determining eligibility, and not referable to the time of payment, is not valid. As was said in respect to a similar contention in *Bradshaw* v. *California Emp. Stab. Com.* (1956) 46 Cal.2d 608, 611-612 [297 P.2d 970], neither the language of the trust agreement nor the hearsay testimony adduced as to general industry employment is sufficient to show that the payments were made with respect to a period before plaintiff's layoffs or discharges. The Supreme Court recognized this consistent holding in California, as established in *Jones* v. *California Emp. Stab. Com.* (1953) 120 Cal.App.2d 770, 773 [262 P.2d 91], and *Shand* v. *California Emp. Stab. Com.* (1954) 124 Cal.App.2d 54, 57 [268 P.2d 193], and likewise noted, without specific approval, a distinction drawn in *Gilliam* v. *California Emp. Stab. Com.* (1955) 130 Cal.App.2d 102 [278 P.2d 528], indicating that if an employee could receive pay in lieu of taking a vacation, the pay did not disqualify him from the receipt of unemployment disability benefits, and in effect was additional pay allocable to the services rendered, as a bonus, or for not taking a vacation.

Plaintiffs rely heavily upon the *Gilliam* case. There, the plaintiffs seamen were discharged for illness or accident resulting in disability and were paid in lieu of vacation time, and also for maintenance and cure. It was held that these payments did not disqualify them from receiving unemployment benefits without deduction. The court in *Gilliam* (p. 105) noted that disability payments were mitigated only by "regular wages" and held that the payments in question were not "regular wages," and noted this as the primary basis of decision (*idem,* note p. 109), and stated that if the Legislature had intended payments other than "regular wages" to disqualify, it would have said so. It was stated that vacation pay without taking time off was a "bonus," a gratuity for not taking time off, and hence not "regular" pay.

The Legislature has spoken. Unemployment Insurance Code section 2656 in reference to disability allowances includes both *wages* and *regular wages;* while Unemployment Insurance Code section 926 specifically

includes bonuses within the definition of wages. In *Gilliam,* it was attempted to distinguish the *Jones* and *Shand* cases, the court stating (p. 110) "those cases are not in point . . . [because] they were not dealing with an in lieu vacation pay situation." The theory was, that the seaman's accrued vacation pay had been earned previously, that upon termination of employment, he was entitled to it immediately, and therefore it was a bonus and could not be allocated to subsequent days (*idem,* p. 109).

The admitted facts in the present case make fully applicable the holding by this court in *Shand* v. *California Emp. Stab. Com., supra,* 124 Cal.App.2d 54, which held at page 57 that although the right to vacation pay is earned by labor in the preceding employment year, vacation pay is not allocable to. that period. Under the trust agreement, the employee cannot at his choice take the pay upon a layoff, or termination of employment, prior to the time that the trustees establish the rules for eligibility, and applying such rules, award and compute the individual vacation pay allowances. Until then, the employee has no vested right in the pay. (Cf. *City of Long Beach* v. *Allen* (1956) 143 Cal.App.2d 41 [300 P.2d 360]; and the holding, *Barrett* v. *Cal. Unemp. Ins. Appeals Bd., supra,* 190 Cal.App.2d 854.) In *Bradshaw* v. *California Emp. Stab. Com., supra,* 46 Cal.2d 608, the arguments advanced here by plaintiffs in respect to vacation pay were rejected as tendered in regard to dismissal pay.[2]

In *Jones* v. *California Emp. Stab. Com., supra,* 120 Cal.App.2d 770, there are parallels with the instant case. The employee was terminated for lack of work. Vacation pay was computed for all employees as of the same date. All were given checks at the same time, regardless of when they elected to take time off, during the year when payment was made. The court held that the parties in their contract used the term "vacation" advisedly (*idem,* p. 772); that when vacation was taken by an employee after the production period, the vacation pay was his wages in respect to such period. There was no provision in the contract to permit him to realize any such benefit during the time he was earning it. (*Idem,* p. 773.) "To say that vacation benefits should be allocated to a period when they are not realizable is as illogical as it is contrary to the intent of the parties as expressed in their agreement." (*Idem,* p. 773.)

The same conclusion was reached in *Shand* v. *California Emp. Stab.*

---

[2] In *Powell* v. *California Dept. of Employment* (1965) 63 Cal.2d 103 [45 Cal.Rptr. 136, 403 P.2d 392], it is noted that "vacation pay" and "in lieu of notice pay" have been held to disqualify an employee from claiming compensation for the same period of time, i.e., the period following such payments, but that amendment of Unemployment Insurance Code section 1265 had removed them from the wage category announced in *Bradshaw, supra.*

*Com., supra,* 124 Cal.App.2d 54, where the court construed an agreement providing for a "vacation with pay" (p. 56). Its holding that such payment was not allocable to the period preceding the computation date appeared to be based on two factors: 1) during said period an employee could not take the pay without taking vacation; and 2) the agreement did not entitle an employee to "extra pay independent of vacation, but only to 'vacation with pay' " (p. 57).

The intent to pay double benefits for the same period, funds being furnished by the employer, is not to be presumed, in the absence of a clear contractual provision to that effect. (*Jones* v. *California Emp. Stab. Com., supra,* 120 Cal.App.2d 770, 774, 777; *Barrett* v. *Cal. Unemp. Ins. Appeals Bd., supra,* 190 Cal.App.2d 854, 858; *Bradshaw* v. *California Emp. Stab. Com., supra,* 46 Cal.2d 608, 611, holding the burden is on the employee to show there is no duplication.) The policy is definitely expressed in Unemployment Insurance Code section 2629, relative to disability payments.

■ The trial court in a proceeding such as this has power to exercise an independent judgment on the evidence. (*Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501, 504 [247 P.2d 561].) But as we view the record, the paramount issue is one of law, on which the evidence is insufficient to support the legal conclusions expressed as findings by the trial court. We find as did the Appeals Board which acted upon substantial evidence. (Code Civ. Proc., § 909; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915, 917 [80 Cal.Rptr. 89, 458 P.2d 33].)

■ The facts found by the referee, adopted by the Board, were not contested in the hearing under Code of Civil Procedure section 1094.5 in the proceeding in the court below.

In their context, the trial court's findings apparently purport to incorporate the legal conclusions in *Gilliam, supra,* as "facts" here. No problem of construction of the collective bargaining agreement nor of the vacation trust agreement is presented. In the absence of the employers as parties in the instant controversy, it is inappropriate to determine the intention of the parties in relation to the "vacation fund" payments by unilateral declarations and hearsay testimony concerning the industry in general. The employer is a party whose interests are directly affected and hence an essential party to such a determination. (Code Civ. Proc., § 389.)

Finding of Fact 2 that eligibility for vacation pay is determined *solely*

by work done in the work year is contrary to the evidence. As noted before, eligibility is determined under the trust agreement, when the trustees meet on the first Monday in March subsequent to the work year. Only after such a determination of the rules of eligibility from time to time is any right (other than a general expectancy) vested in any employee. The trustees are not accountable to any individual employee, nor can any individual employee assert any right in the fund before such determination, computation and distribution.

Findings of Fact 7 and 14, that the payments made are "bonuses" are not supported by any evidence. "Vacation payments" are specified in the Trust Agreement. This is not an ultimate fact in any event, since a bonus constitutes wages. So far as the trustees are concerned, payments are made, whether or not time off is taken, or whether it is pocketed while the employee continues to work. The record does not show the materiality of any such fact as to the individual plaintiffs. The record shows that none of the payments in question were received while the plaintiff employees continued on the job. The entire lawsuit arises because the payments were made to them after the several plaintiff employees had been laid off or discharged. Suppositions as to what inapplicable possibilities existed therefore do not determine the question before us.

Findings of Fact 8 and 15, that "benefit [sic, vacation] payments" are also additional compensation paid employees for not taking vacations during the busy season find no support at all in the evidence, which was that vacations commonly were neither requested nor granted during the busy season. Neither the individual employers nor evidence respecting their individual vacation policies and practices were before the referee, the Board nor the trial court. The testimony is that the trustees established eligibility based upon the amount of wages earned, and were not concerned at all about when they were earned during the work year.

Findings 9 and 10 (which restate the invalid premise of No. 2) are unsupported by the evidence and contrary to the applicable law. As a matter of law, the rights of the employees did not become vested until the trustees, after the work year, determined the criteria and the payments to be made under it, in March 1967. Thus, the finding that the vacation payments were sums earned by the petitioners in 1966 likewise is untenable.

Conclusion of Law 1 is that the vacation payments were wages payable in the work year for work determining eligibility. We have concluded as indicated above that such is not the established law.

The judgment is reversed, with directions to the trial court to recall the peremptory writ of mandate, and enter judgment for appellants.

Shoemaker, P. J., and Taylor, J., concurred.