[Civ. No. 60043. Second Dist., Div. One. Mar. 30, 1981.]

LOS ANGELES TURF CLUB, INC., et al.,
Plaintiffs and Respondents, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Appellants.

455

---

COUNSEL

George Deukmejian, Attorney General, Willard A. Shank, Chief Assistant Attorney General, Arthur C. de Goede, Assistant Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Defendants and Appellants.

O'Melveny & Myers and Scott H. Dunham for Plaintiffs and Respondents.

---

OPINION

SPENCER, P. J.—

## INTRODUCTION

Defendants California Unemployment Insurance Appeals Board and Martin R. Glick, Director of the Employment Development Department (Department), appeal from a judgment in which the trial court ruled that plaintiffs were entitled to a refund of taxes on the ground that certain lump-sum payments made to qualified seasonal employees were vacation pay excluded from taxation pursuant to Unemployment Insurance Code section 1265.5.

## STATEMENT OF FACTS[1]

The Federation of California Racing Associations, Inc. (Federation) negotiates statewide union contracts with the Pari-Mutuel Employees

---

[1]The parties to the original administrative proceeding stipulated to the facts at issue herein. The trial of the instant matter was based on the administrative record pursuant to further stipulation.

Guild of California, Local 280, Service Employees International Union, AFL-CIO (Local 280) and with Local 495 of the Teamsters Union. The plaintiffs are all signatories to these industrywide master contracts.

There are 24 annual horse racing meets in California, varying in length from 8 to 79 racing days, and in some cases, covering overlapping time periods. Potentially, a seasonal race track employee in southern California can work up to six racing meets a year. During each racing meet, each plaintiff uses the services of various seasonal employees, most of whom are pari-mutuel clerks. Under the provisions of the collective bargaining agreement, Local 280 determines the seniority of each union member. Before each racing meet, the prospective employer submits a manpower requisition to Local 280 which is filled on a seniority basis from those union members requesting employment.

Pursuant to the terms of Local 280's collective bargaining agreement, plaintiffs are required to make lump-sum payments termed "vacation pay" promptly at the end of each racing meet to qualified employees. Only those employees designated as "regular," as opposed to "extra," employees qualify to receive the lump-sum payments. "Regular" employees are identified as those working more than 60 percent of the racing days during a particular racing meet. In essence, "regular" seasonal employees depend on the racing industry for their livelihood and do not seek work outside of the industry.

As a general rule, these employees do not take vacations during the racing meets in which they participated. However, an employee may vacation during a racing meet and still receive his lump-sum payment at the end of the meet. If an employee chooses to take a vacation during a racing meet in which he is participating, he is not compensated for the days taken and does not earn credit toward the 60 percent work requirement. Should an employee be felled by illness or otherwise unable to work due to circumstances beyond his control, he does receive credit toward the 60 percent requirement.

The disputed tax assessments were levied against the lump-sum payments made pursuant to Local 280's collective bargaining agreement and other agreements containing similar provisions. The assessments cover periods ranging from the fourth quarter of 1972 to the second quarter of 1975.

## CONTENTIONS

■ Defendants contend that the lump-sum payments made to seasonal employees pursuant to the collective bargaining agreements were not exempt from taxation as vacation pay within the meaning of Unemployment Insurance Code section 1265.5.

## DISCUSSION

■ Where a matter is submitted upon stipulated facts, this court is faced with a question of law subject to our independent interpretation. (*Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249].) Consequently, the only issue before us is the meaning of the term "vacation pay" as used in Unemployment Insurance Code section 1265.5.[2] ■ Our construction of section 1265.5 requires us to consider the usual and ordinary import of the language used, to attempt to achieve harmony among the parts of the entire statutory system, and to ascertain the legislative intent. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].)

The Unemployment Insurance Code is a comprehensive legislative scheme to ameliorate the hardships of those persons who find themselves unemployed through no fault of their own. To that end, the Legislature has generally measured both the benefits to be received and the tax burdens to be imposed by the compensation paid by employers to employees. (*Cal. E. Com.* v. *Black-Foxe Inst.* (1941) 43 Cal.App.2d Supp. 868, 872 [110 P.2d 729].) Accordingly, section 1252, subdivision (a)(1) defines an individual as unemployed during "any week in which he or she . . . performs no services and with respect to which no wages are payable to him or her," and benefits are payable only upon the concurrence of those conditions.

A developing line of authority has recognized that "vacation pay" must be allocated to the period in which it is realizable rather than to

---

[2]Unemployment Insurance Code section 1265.5: "Notwithstanding any other provision of this division, payments to an individual for vacation pay or holiday pay which was earned but not paid for services performed prior to termination of employment, or commencement of unemployment caused by disability, as the case may be, shall not be construed to be wages or compensation for personal services under this division and benefits payable under this division shall not be denied or reduced because of the receipt of such payments."

the period in which it is earned by services rendered. (See *Abud* v. *Department of Employment* (1971) 14 Cal.App.3d 405, 410 [92 Cal.Rptr. 446]; *Shand* v. *California Emp. Stab. Com.* (1954) 124 Cal.App.2d 54, 57 [268 P.2d 193]; *Jones* v. *California Emp. Stab. Com.* (1953) 120 Cal.App.2d 770, 773 [262 P.2d 91].) Hence, once vacation pay is realizable, it is allocated to the period when vacation is taken; if it has not been taken previously, it is allocated to the period following termination of employment and, prior to the enactment of section 1265.5, postponed the payment of unemployment benefits.[3]

■ Section 1265.5 specifically states that payments for vacation pay "which was earned but not paid for services performed prior to termination of employment ... shall not be construed to be wages or compensation for personal services" in assessing *either* eligibility for unemployment benefits or tax liability. It is apparent that the enactment of section 1265.5 was a legislative response to the prevailing judicial treatment of vacation pay. As such, it represents a legislative decision that (a) it is desirable in matters of unemployment insurance that all payments earned by employees be allocated to the period during which they were earned rather than the period in which they can be realized, and (b) in view of the increase in benefits conferred by allocating vacation pay to the period in which earned, it is desirable to lessen the burden of taxation to that extent.

Plaintiffs urge us to hold that section 1265.5 has destroyed the distinction between the terms "vacation pay" and "pay in lieu of vacation." It does not appear that the distinction should carry any significance in California with reference to unemployment benefits as opposed to disability allowances. Our research indicates that the only California case which has spoken on the subject is *Gilliam* v. *California Emp. Stab.*

---

[3]"Vacation pay" has been distinguished from "pay in lieu of vacation," which is termed a bonus allocable to the period in which earned. The cases which made the distinction involved situations where the employee enjoyed the option to receive pay rather than a paid vacation. Upon exercising the option, the employee was deemed to have received a bonus for not taking a vacation, thus allocable to the period during which he worked. (See *Gilliam* v. *California Emp. Stab. Com.* (1955) 130 Cal.App.2d 102 [278 P.2d 528]; *Stewart* v. *Florida Department of Commerce* (Fla.App. 1971) 246 So.2d 146; *Rich Manufacturing Corporation* v. *Lindsey* (1965) 376 Mich. 241 [137 N.W.2d 140].) On the other hand, "vacation pay" has been recognized not only where the contract of employment provided for vacation with pay (*Shand* v. *California Emp. Stab. Com., supra,* 124 Cal.App.2d 54), but where payments were made after a computation period without reference to whether or when vacation was taken (*Abud* v. *Department of Employment, supra,* 14 Cal.App.3d 405; *Jones* v. *California Emp. Stab. Com., supra,* 120 Cal.App.2d 770).

*Com., supra*, 130 Cal.App.2d 102. *Gilliam* determined that "pay in lieu of vacation" was a bonus or gratuity for not taking a vacation, thus not "regular wages" within the meaning of Unemployment Insurance Code section 2656 which, at that time, limited the disability benefits payable to employees who receive "regular wages" during the period of disability. In contrast to section 2656, Unemployment Insurance Code section 1252 (which governs eligibility for unemployment benefits) refers only to wages in determining whether an individual is unemployed. Unemployment Insurance Code section 926 specifically includes bonuses within the definition of wages.

However, as defendants point out, the Unemployment Insurance Appeals Board has assumed that the distinction is significant with respect to unemployment benefits. (See, generally, *In re Pyle* (1961) Benefit Dec. No. B. D. 6663.) For purposes of the instant appeal, we need not determine whether this assumption has been erroneous, thus rendering "pay in lieu of vacation" subject to the terms of section 1265.5. Plaintiffs' lump-sum payments to their seasonal employees pursuant to the collective bargaining agreements fall well within the judicial definition of vacation pay. In fact, the instant payments bear a marked similarity to the collective bargaining scheme considered in *Abud* v. *Department of Employment, supra*, 14 Cal.App.3d 405.

Like the instant case, the collective bargaining agreement in *Abud* was industrywide in nature and did not attempt to determine the vacation policies, or lack thereof, of individual employers within the industry. Further, both the *Abud* agreement and the instant agreement provide mechanisms for determining eligibility for the payments at a specific point in time; once eligibility is determined, payment is made to qualified employees without inquiry as to whether vacation is actually taken and without regard to whether the individual is still employed in the industry. As in *Abud*, the instant agreement bases payments on a percentage of gross wages.

Defendants nevertheless assert that the change in terminology in the Teamster Local 495 collective bargaining agreements from "vacation and holiday pay" to "bonus and holiday pay" and the language in the 1972 Local 280 agreement which provided that vacation pay "shall be allocated to unworked days during the meeting" mandate a determination that the lump-sum payments were in fact pay in lieu of vacation. We cannot agree with defendants' interpretation. Rather, it appears that the change in terminology and the allocation language were, like

Unemployment Insurance Code section 1265.5, a response to *Abud* and its predecessors. Hence we find that the instant payments exhibit no significant differences from those considered in *Abud* and qualify as vacation pay. Accordingly, the payments were exempt from taxation under the terms of Unemployment Insurance Code section 1265.5.

The judgment is affirmed.

Lillie, J., and Johnson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.