STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES MASNIK, PLAINTIFF IN ERROR.

Argued October 3, 1939—Decided October 20, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the plaintiff in error, *David I. Stepacoff*.

For the defendant in error, *Charles M. Morris,* prosecutor of the pleas, and *George S. Applegate,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

PORTER, J. The plaintiff in error was indicted and convicted of incestuously having carnal knowledge of the body of his daughter, Mary Masnik, on February 8th, 1939, and at other times. Mary Masnik testified that this offense occurred on October 23d, 1938, and again on February 8th, 1939, at the home of her parents where she resided with them and a brother.

It was also testified on behalf of the state that Mary Masnik was pregnant with child as a result of the conduct of her father on the first occasion; that he made a confession to the police of both offenses which was reduced to writing and signed and sworn to by him; and further, that shortly before the trial of the indictment he had gone to the place of employment of his son, Paul, and had asked him to help him "kill the case" by asking Paul to take the blame for Mary's condition and also said that he would pay $4,000, or $5,000, to "kill the case" and asked Paul to see his sister and mother on his behalf.

The plaintiff in error denied the charge and denied that he made the said alleged propositions to Paul. He further said, in effect, that he had been induced by the police to make a false confession by deceit in that he was told that it would be to his interest to do so. The plaintiff in error argues three points on assignment of error and specifications of causes for reversal based upon the entire record.

It is first contended that the trial court was in error in permitting Anna Masnik, wife of plaintiff in error, to testify to matters other than to prove the fact of marriage. She was asked, and answered without objection, questions as to the number of children born of the marriage, the age of her daughter, Mary, of whom the household consisted, and whether Mary was a child of the marriage.

A wife or husband is precluded from testifying against each other in a criminal action except to prove the fact of mar-

riage. *R. S.* 2:97-4. The testimony of the wife was erroneously admitted and should have been struck even though the objection was untimely. Nonetheless we deem it harmless error for the reason that the same testimony was later on properly adduced by other witnesses including the plaintiff in error. There was therefore no prejudice to the plaintiff in error by the admission of the testimony of the wife. *Cf. State* v. *Littman*, 86 *N. J. L.* 453; *affirmed,* 88 *Id.* 392; *State* v. *Matarazza*, 93 *Id.* 47; *affirmed,* 94 *Id.* 263. *State* v. *Sandore*, 1 *N. J. Mis. R.* 537; *affirmed,* 100 *N. J. L.* 187.

Secondly it is the contention that the trial court committed error in charging to the jury as a fact what was not a proven fact as to the guilt of the plaintiff in error. The objection is to the part of the charge wherein the court stated:

"Now there is another item in the case which we cannot overlook, and that is that the girl is pregnant. This is admitted on all sides. The doctors testified that she was, and she has that appearance. She is pregnant by someone, and there is no testimony, not a shadow of testimony in the case, that she had anything to do with any other man at any time during the period in which conception took place so that she would be in the stage of pregnancy which she now is. There was an intimation by Mrs. Hulak that the girl had admitted that years ago she had something to do with some boy. * * * Often times in cases of this sort, sex cases, there is an attempt to prove that someone else is the father of a child by testimony more or less directed that she had intercourse with somebody else during the period, but there is no such testimony whatever in this case."

It appears from Mrs. Hulak's testimony that Mary called upon her in February, 1939, and told her that she had not had "her monthly period for six months." Then follow these questions and answers:

"*Q.* This was in February? *A.* Yes, and I asked her if she was fooling around with any boys and she said no. She asked me if I had any quinine pills to give her and I said no, I didn't. *Q.* Mary stated on direct examination that she had no boy friends. Did she ever say anything to you that does not agree with that statement? *A.* Yes. She told me in

February that Joe Hordash had intercourse to do with her twice. *Q.* Did she say when that took place? *A.* No."

It is argued on behalf of the plaintiff in error that the testimony may indicate that someone other than the plaintiff in error was responsible for Mary's pregnancy. Therefore, the court had charged as a fact a material matter of which the fact was disputed. It may be that the conclusion arrived at by Mrs. Hulak was that Mary's pregnancy was caused by some one other than by the plaintiff in error. If so the only basis for that conclusion was Mary's statement to her that she had had sexual intercourse with Hordash. Such a conclusion cannot be sustained by the evidence in face of the fact that Mary did not say when the intercourse with Hordash had occurred nor with the statement that she had not menstruated for six months, especially in view of the fact that at the time of the trial, May 8th, 1939, the baby had not yet been born and also when the fact is kept in mind that Mary told her on more than one occasion that her father had caused her pregnancy. It seems to us that this testimony does not permit any inference to be drawn that anyone other than plaintiff in error had caused the pregnancy. So we conclude that the court did not charge as a fact what was in dispute. On the contrary, we think that what was said on this point was entirely accurate and in accord with the testimony. The case is barren of any proof that any one other than plaintiff in error had had intercourse with Mary within the period which would give rise to an inference that some one other than he has caused her pregnancy and so raise doubt as to his guilt under the indictment. Considering the charge as a whole we find that the court in reviewing the testimony clearly admonished the jury to disregard any misstatement of it he may have given but rather to base its verdict on its own recollection of the testimony.

Lastly it is urged that the statute under which the conviction was had is unconstitutional. It is pointed out that there are two statutes concerning incest. *R. S.* 2:139-1 and *R. S.* 2:139-2. The former statute provides:

"Persons who shall intermarry within the degrees prohibited by law, or who, being related within such degree, shall

together commit fornication or adultery, shall be guilty of incest and punished by fine not exceeding $1,000, or imprisonment at hard labor not exceeding five years, or both."

It is claimed that the prosecution was under this statute because the facts came within it and the indictment was captioned "for incest," and further that the court also referred to the crime in its charge as incest. It is contended that this act is incomplete by reason of its reference to another statute, viz., the prohibition of intermarrying within the degrees prohibited by law and so is void under the Constitution, article IV, section 7, paragraph 4, which provides: "No act shall be passed which shall provide that any existing law, or part thereof, shall be applicable, excepting by inserting it in such act." This argument rests on the assumption that the indictment was found under *R. S.* 2:139-1. We conclude, as later discussed, that it was not, but was found under *R. S.* 2:139-2, therefore this argument is not in point. However, we think that there is no merit to it because this statute does not provide that any existing law, or part thereof, shall be applicable. What is meant by the quoted provision of the Constitution was a reference to other statute law. Persons who were within the degree prohibited by law were defined by the common law. This statute containing this language as well as the Marriage act. *R. S.* 37:1-1 is merely declaratory of the common law. *Cf. Campbell* v. *Board*, 45 *N. J. L.* 241; *Bradley, &c.,* v. *Loving*, 54 *Id.* 227; *Kennedy* v. *Belmar*, 61 *Id.* 20; *In re Haynes*, 54 *Id.* 6; *State* v. *Hancock*, 54 *Id.* 393; *Quigley* v. *Lehigh Valley Railroad Co.*, 80 *Id.* 486; *Nutchess* v. *Hohokus*, 82 *Id.* 142.

As we have observed there are two statutes concerning incest. *R. S.* 2:139-1 and *R. S.* 2:139-2. The first covers incest only and the second concerns not only incest but incestuous conduct. The latter is more comprehensive and carries a greater penalty. It is as follows:

"Every parent who shall be guilty of incest, fornication, adultery or open lewdness with, or any act of indecency towards, or tending to debauch the morals or manners of any child or children of said parent, or who shall make any infamous proposal to any child or children of his own flesh

and blood, with intent to commit adultery, or fornication with such child, shall be guilty of a high misdemeanor, and punished by fine not exceeding $1,000, or imprisonment at hard labor not exceeding fifteen years or both."

The indictment clearly charges the offense against plaintiff in error, James Masnik, in these words: "then and there being the father of Mary Masnik, did then and there unlawfully and feloniously and incestuously have carnal knowledge of the body of his said daughter, Mary Masnik," &c. That indictment in our opinion was for incestuous conduct under *R. S.* 2:139-2. He was not charged with incest but with incestuous conduct in that he did "incestuously have carnal knowledge of the body of his said daughter." The proofs fully supported the charge and at no time was there any confusion or uncertainty of what the offense was or what statute was involved either at the trial or when sentence was pronounced. The caption on the indictment was not part of it and is wholly immaterial. Nor under the circumstances was there any prejudice by the court in its charge or when passing sentence in speaking of incest. In charging the jury the court did correctly read the indictment and the sentence was properly imposed under the provisions of *R. S.* 2:139-2.

It is also argued that if it is a fact that the prosecution was under the latter statute the plaintiff in error is placed in a position where he may be punished twice for the same offense contrary to law. It is contended that under the statute in question every parent who is guilty of incest is guilty of a high misdemeanor. Hence the two statutes under consideration with different penalties, both for the same offense, incest, it follows that the plaintiff in error having been convicted of incest he may have an additional sentence imposed by imprisonment for a term not exceeding five years and a fine of $1,000, under *R. S.* 2:139-1. The argument being that the statute does not provide for a trial by jury but states "a parent who is guilty of incest * * * is guilty of a high misdemeanor." Therefore the additional penalties may summarily follow. We do not construe the meaning of the word guilty as used in the said statute to mean conviction or the finding of a jury.

Being guilty is defined as having guilt, justly chargeable with a crime, not innocent. 28 *Corp. Jur.* 1321; *Bouvier's Law Dictionary.* An offense under the former statute would be an essential ingredient of an offense under the latter statute and a verdict under one of the two statutes would be a bar to any subsequent proceedings under the other.

Finding no errors prejudicial to the plaintiff in error the judgment will be affirmed.