409 Ill. 576 (1951)
101 N.E.2d 95
GEORGE L. GROBE, Appellant,
v.
THE BOARD OF REVIEW OF THE DEPARTMENT OF LABOR et al., Appellees.
No. 31832.
Supreme Court of Illinois.
Opinion filed September 21, 1951.
*577 WILLIAM ZWANZIG, WENDELL THOMPSON, and JOSEPH E. LANUTI, all of Ottawa, for appellant.
IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, of counsel,) for appellee The Board of Review; HIBBS, POOL & LANGER, of Ottawa, for appellee Libbey-Owens-Ford Glass Co.
Judgment affirmed.
Mr. JUSTICE HERSHEY delivered the opinion of the court:
George L. Grobe, an employee of the Libbey-Owens-Ford Glass Company, has appealed from an order of the circuit court of LaSalle County, which affirmed an order of the Board of Review of the Department of Labor of Illinois, denying unemployment compensation benefits to appellant for the period from August 5 to August 19, 1946. A direct appeal is permitted to this court by section 14 of the Unemployment Compensation Act. Ill. Rev. Stat. 1949, chap. 48, par. 230.
Libbey-Owens-Ford Glass Company, herein referred to as appellee, is engaged in the manufacture of plate glass at Ottawa, Illinois. On May 4, 1946, two of the manufacturing *578 plants of appellee were shut down for a period of ten days on account of a general coal shortage. Appellants' claim for unemployment compensation for that period was allowed without contest. When the plant reopened on June 3, 1946, the company posted on all of its bulletin boards a notice addressed to its employees, among whom was appellant, in which it was stated that plants No. 5 and No. 7 would cease operations at the completion of work the week ending August 3, 1946, and would resume operations August 19 following, for the purpose of allowing vacation time to the employees involved. The notice further stated that vacation pay for all eligible employees would be included with their regular pay check of Friday, June 14. Accordingly, checks for vacation pay were delivered by the company to all the eligible employees on that day. Appellant's check for vacation pay amounted to $79.50. No regular work was carried on in either plant during the two weeks' period designated for vacations. Extensive repairs, however, were carried on in both plants during the shutdown period. Most of the repairs were of a character which would not be made while the plant was in operation. At the end of the two weeks' period, plant No. 5 resumed operations, while plant No. 7 was not opened because of a cancellation of orders by one of the customers of the company. Employees working in plant No. 7 were allowed unemployment compensation for the week they were out of work on account of the plant not reopening at the end of the vacation period.
Appellant filed a claim for unemployment compensation for the period from August 5, 1946, through August 19. He did no work for the company during the designated vacation period, never requested a vacation at some other time, and took no other vacation during the year. The claims deputy designated by the Director of the Department of Labor found that appellant was entitled to compensation. This finding by the deputy was reversed after *579 a hearing before the referee designated by the Director. The decision of the referee has been affirmed successively by the board of review and the circuit court of LaSalle County.
Appellant contends that he was unemployed during the period from August 5 to August 19 within the meaning of the Unemployment Compensation Act, and that the money paid him on June 14 did not constitute wages for personal services as defined in the act. In his argument appellant takes the position that an employee had the option of requesting a vacation period at any time between the dates of February 1 and December 31 of the current year; that an employee could not be compelled to take a vacation at any time and would be entitled to two weeks' vacation pay whether he took a vacation or not; that an employee who did not voluntarily take a vacation during the year was entitled to 54 weeks' pay for 52 weeks' work; that an employee who had taken a vacation prior to the time designated by the company would have received his vacation pay and would also be entitled to unemployment compensation during the period of the shutdown designated by the company, while an employee who desired to take a vacation in the months subsequent to the time designated for vacations by the company would be denied unemployment compensation for either period. Appellee maintains that it had the right to fix a vacation period for its employees and that the vacation pay received by its employees was a payment of wages provided for in its contract with the union.
The Unemployment Compensation Act declares its policy and moving purpose to be to alleviate the evils flowing from widespread unemployment and to provide benefits to those workers coming within the act as at least a partial reimbursement for loss of income during the period of unemployment. (Zehender & Factor, Inc., v. Murphy, 386 Ill. 258.) From the provisions of the act it is apparent that it is the legislative intent and the policy of the act that *580 employment shall be based upon a contract of hire, or on employment for remuneration, whether it be for wages, commission, or of whatever form it might consist. (Crouch v. Murphy, 390 Ill. 112.) The act defines wages to include every form of remuneration payable for personal services. (Van Ogden, Inc., v. Murphy, 390 Ill. 133.) It becomes necessary, therefore, to examine appellant's claim for unemployment compensation in the light of the terms of his employment.
For a number of years appellee had operated its plant under an employment contract with the Federation of Glass, Ceramic, and Silica Sand Workers of America, Local Union No. 19, of which appellant was a member. Incorporated in the employment contract for the year in controversy was a vacation plan for employees, the pertinent parts of which are as follows:
"31. The Company will give each employee a vacation with pay sometime between the dates of February 1 and December 31 of each year based on previous service and conditions as outlined below: Each employee with one year's service as of September 20th of the current year who has worked between the dates of February 1st and August 31st of the current year, both inclusive, will be eligible for one week's vacation with pay provided he has worked a minimum of five hundred (500) hours during the preceding calendar year. Vacation pay will be 2% of his gross earnings for the preceding calendar year with a minimum of fifteen ($15.00) dollars. Each employee with five years or more service as of September 20th of the current year who has worked between the dates of February 1st and August 31st of the current year, both inclusive, will be eligible for two weeks' vacation with pay provided he has worked a minimum of five hundred (500) hours during the preceding calendar year. Vacation pay will be four (4) percent of his gross earnings for the preceding calendar year with a minimum of thirty ($30.00) dollars. *581 Upon proof of induction in the armed forces an employee otherwise eligible for vacation with pay shall be paid the appropriate vacation allowance. When a department is closed down, all employees affected will receive their vacation pay along with the regular check. This will not preclude any employee so affected from requesting a vacation at some other time during the vacation period. The company will endeavor to comply with the employees vacation request but vacation scheduling must not interfere with plant operations. In either case a reasonable advance notice should be given. All employees who have not received their vacation prior to December 1st of each year will receive their vacation pay on the first Friday payday in December. All vacation pay will be given when an employee takes his vacation, unless he has previously received the same, as outlined in preceding paragraphs."
The plain import of this contract is that the company each year would give its employees a vacation with pay. The contract contemplated that when a department was closed down, the employees of that department would receive their vacation pay and take their vacation at that time. While an employee was permitted, under the terms of the contract, to make a request for vacation at some time other than when a department was closed down, the company retained the right to deny any application for vacation which would interfere with the operation of the plant. In the instant case the company exercised its right to close down a department for a vacation period, in accordance with the terms of its contract with the union. Appellant made no request for a vacation at any other time. Had he requested a vacation at an earlier period, and had his request been allowed, and had his vacation been taken prior to the vacation period designated by the company, an altogether different question would have been presented. In such case he would already have taken his vacation prior to the vacation period designated by the company *582 and could not have been required to take a second vacation. His vacation would then have been voluntary unemployment, for which he was entitled to compensation in the form of vacation pay as provided in the contract of hire, and the subsequent loss of work, during the shutdown period designated as a vacation period for other employees, would have been compensable as involuntary unemployment on his part. On the other hand, had he requested a vacation subsequent to the vacation period fixed by the company, he would have challenged the right of the company to designate vacation periods for its employees, and, as the company had the right, under the terms of the contract, to fix such vacation periods, any later vacation he might have elected to take would have been voluntary unemployment on his part and would not have been compensable under the act. It has been definitely settled that by section 1 of the act the legislature intended that only those who were involuntarily unemployed should receive unemployment compensation. (American Steel Foundries v. Gordon, 404 Ill. 174; Local Union No. 11 v. Gordon, 396 Ill. 293; Zehender & Factor, Inc. v. Murphy, 386 Ill. 258.) Appellant's unemployment between the dates of August 5 and August 19, 1946, was not involuntary unemployment within the terms of the Unemployment Compensation Act. On the contrary, the designated vacation period was voluntary unemployment arising out of the employment contract entered into between the company and its employees in contemplation of the provisions of the act. To permit appellant to be paid unemployment compensation because he was not working during the period set aside for a vacation, taken in compliance with the contract under which he was employed, would violate the purpose and intent of the Unemployment Compensation Act.
Appellant further contends that the vacation pay received by him on June 14 was not for personal services *583 rendered during the vacation period and did not constitute wages within the meaning of the Unemployment Compensation Act. Section 2(g) of the act defines wages as meaning every form of remuneration for personal services, including salaries, commissions, bonuses, and the reasonable money value of all remunerations in any medium other than cash. Section 2(k) of the act provides that an individual shall be deemed unemployed in any week with respect to which no wages are payable to him. (Ill. Rev. Stat. 1949, chap. 48, par. 218, 2(g), 2(k).) Under the terms of the contract with the union the amount of the vacation pay to be received by appellant was fixed at a certain per cent of his gross earnings for the preceding calendar year, provided he had worked a minimum of 500 hours during such year. The duration of his vacation depended upon the number of years he had served the company. The extra compensation received by appellant, for the period in question, was directly related to the vacation period and was intended to be compensation for such period. Such extra compensation was designated throughout the contract as "pay" for the time which each employee had earned as his vacation during the current year. The posted notice which designated the vacation period specified that "vacation pay" would be included with "regular pay" on the June 14 payday. The payment of the extra compensation for the vacation period falls within the statutory definition of wages set forth in section 2(g) of the act. Appellant, having been paid wages as defined by the act for the vacation period in question, fails to qualify himself as unemployed within the meaning of section 2(k) of the act.
The conclusion we have reached is in accord with the general purpose and intent of the legislature in enacting the Unemployment Compensation Act. The purpose of the act is to provide benefits, to workers coming within *584 its provisions, for unemployment not occasioned with their consent or brought about by their fault. The payment of unemployment compensation to a worker for a period of vacation with pay would not fulfill the purposes of the act. This view of the case is recognized and supported by decisions in courts of last resort in other jurisdictions where the same question has been determined. Wellman v. Riley, 95 N.H. 507, 67 Atl.2d 428; Kelly v. Administrator, etc., 136 Conn. 482, 72 Atl.2d 54.
The judgment of the circuit court of La Salle County affirming the decision of the board of review is right and is accordingly affirmed.
Judgment affirmed.