[Civ. No. 16132. First Dist., Div. One. Jan. 5, 1955.]

AUBREY GILLIAM et al., Appellants, v. CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION et al., Respondents.

Gladstein, Andersen & Leonard, Lloyd E. McMurray and Gladstein, Anderson, Leonard & Sibbett for Appellants.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, William L. Shaw and Vincent P. Lafferty, Deputy Attorneys General, for Respondents.

Richard Ernst, as Amicus Curiae on behalf of Respondents.

BRAY, J.—In a proceeding in the superior court brought under section 1094.5, Code of Civil Procedure, to review a decision of the Unemployment Insurance Appeals Board affirming a decision of a referee for the Department of Employment denying benefits to plaintiffs, the court discharged an alternative writ of mandate and entered judgment in favor of defendants. Plaintiffs appeal.

### QUESTIONS PRESENTED

1. Are seamen who, under their collective bargaining agreement, have an option to take pay in lieu of vacation, entitled

also to unemployment compensation disability benefits[1] under the Unemployment Relief and Insurance Act (Deering's Gen. Laws, Act 8780d)[2] § 11 (a) (1), and title 22, California Administration Code, section 261(i)?

2. Are seamen who receive "maintenance and cure"[3] provided for in said agreement entitled to such benefits?

### RECORDS

Plaintiffs are seamen employed under collective bargaining agreements between Pacific Maritime Association[4] and National Union of Marine Cooks and Stewards, and whose employment was terminated by reason of illness or accident resulting in disability. Each plaintiff applied to the department for unemployment compensation disability benefits and his application was refused by the examiner because of receipt of either pay in lieu of vacation or maintenance and cure, and in Ledda's case, receipt of both. Plaintiffs appealed to the Division of Appeals, Department of Employment. A hearing before the referee resulted in a decision adverse to plaintiffs. On appeal to the Appeals Board from the referee's decision, said decision was affirmed with modification. Plaintiffs then obtained an alternative writ of mandate from the superior court. The cause was submitted on the certified administrative record and briefs. Judgment was entered affirming the decision of the Appeals Board. The effect of the decision is to hold that seamen, who become disabled and who receive maintenance and cure, or who, having the option of taking pay in lieu of vacation, receive pay in lieu of vacation, are disqualified from receiving disability benefits *pro tanto*. The act provides benefits to be paid to a disabled individual for "each full day during which he is unemployed." (§ 205.) The bargaining agreement provides for vacation with pay to stewards having six months or more continuous service in accordance with a detailed plan. Section 208 provides: "No individual shall be paid unemployment

---

[1] Hereafter referred to as "disability benefits."

[2] The act was greatly revised and is now the Unemployment Insurance Code, adopted April 21, 1953. However, the law applicable here is Act 8780d, Deering's General Laws, 1949 pocket supplement.

[3] "Maintenance and cure" refers to the traditional payments required by maritime law of shipowners to be paid seamen who are injured or become sick or disabled while in the service of the ship. "Maintenance" is the payment to provide food and shelter to the seaman during the period when he cannot work. "Cure" is the cost of doctor's services, medicines, etc.

[4] Which filed an amicus curiae brief.

compensation disability benefits with respect to any week if he continues to receive his *regular wages,* or any part thereof; . . .'' (Emphasis added.) The court found that vacation pay constitutes "wages" under section 11 (a) (1) of the act, which provides: ". . . the term 'wages' means: (1) All remuneration payable for personal services, whether by private agreement or consent or by force of statute, including commissions and bonuses, and the cash value of all remuneration payable in any medium other than cash"; also under section 261(i), title 22, California Administrative Code, which provides: "(i) 'Regular Wages' as that term is used in Section 208 of the act means compensation paid entirely by an employer directly to his employee as a full or partial payment of his remuneration during a period of disability."

### Is in Lieu Vacation Pay "Regular Wages"?

It should be pointed out that there is a decided conflict in the findings of both the board and the court in this: both found that plaintiffs' vacation pay was not "regular wages" and yet that plaintiffs were receiving wages as defined in section 11 (a) (1) *and* section 261(i), Administrative Code. The latter section by its terms refers to section 208 only, and defines the "regular wages" mentioned in that section. It has no relation to "wages" or section 11 (a) (1). Thus the findings, in effect, find that plaintiffs' vacation pay was not "regular wages" and yet were "wages" as defined in section 261(i), Administrative Code, which only defines "regular wages." We can disregard this conflict, as even though plaintiffs were receiving "wages" as defined in section 11 (a) (1), they still would be entitled to disability benefits unless they were receiving the "regular wages" mentioned in section 208 defined by section 261(i). Section 151(a) provides that should there be a conflict between the provisions regarding unemployment compensation (art. 1 to 9, inclusive, of the act) and those regarding unemployment compensation disability benefits (art. 10), the latter provisions shall prevail with respect to such benefits. So the question we are to decide is, "Is vacation pay 'regular wages'?"

Plaintiffs contend that "regular wages" in section 208 has a definite meaning, namely, the wages the disabled workman was regularly receiving during his employment up to the time of disability, and that, having such meaning, the power given the Department of Employment by section 90 of the act, to promulgate regulations, of which section 261(i),

Administrative Code, is a part, does not include the power to define "regular wages" so as to extend its definite meaning, and therefore "regular wages" can mean nothing except the claimed definite meaning. We agree with plaintiffs that the department would have no power to enact a regulation or give a definition contrary to the terms of the act, but we do not agree that the term "regular wages" as used in section 208 has such a definite and understood meaning that it does not need defining. ██ It is an ambiguous term and requires defining. ██ We find no conflict between section 208 of the act and section 261(i), Administrative Code.

In determining whether the vacation pay here is "regular wages" as used in section 208, as defined by section 261(i), Administrative Code, there are two matters to be considered: (1) Is vacation pay "remuneration" and (2) is it such "during a period of disability." ██ (1) In unemployment compensation cases vacation pay[5] is generally considered earned compensation or wages and not a gratuity. (*Jones* v. *California Emp. Stab. Com.*, 120 Cal.App.2d 770 [262 P.2d 91]; *Shand* v. *California Emp. Stab. Com.*, 124 Cal.App.2d 54 [268 P.2d 193]; *In re Wil-low Cafeterias*, (C.C.A.2d Cir., 1940) 111 F.2d 429.)

The bargaining agreement provided that after six months' employment, the employee "shall be granted vacation, or in lieu thereof, vacation pay in accordance with the following schedule:" In other states it has been held that where, under the union contract of employment, the employee has the option of taking pay in lieu of vacation, such pay is considered a "bonus" rather than wages or compensation in cases involving unemployment compensation. (*Renown Stove Co.* v. *Michigan Unemp. Comp. Com.* (1950), 328 Mich. 436 [44 N.W.2d 1].) There the employer laid off the plaintiffs indefinitely for lack of work. There were two classes of employees: (1) Those whose employment contract provided for vacation with pay for the period July 5 to 18, without any provision for payment in lieu of vacation. The Michigan law provided that an employee was disqualified for unemployment compensation benefits for any week with respect to which he received "vacation with pay." The court held these employees to be so disqualified. (2) Those whose union employment contract gave them the option to either take a vacation or pay in lieu thereof. The court held that these

---

[5]As distinguished from in lieu vacation pay, hereafter discussed.

employees taking pay in lieu of vacation were not receiving "vacation with pay" but were receiving a bonus and hence not disqualified from unemployment compensation benefits. In *Hubbard* v. *Michigan Unemp. Comp. Com.* (1950), 328 Mich. 444 [44 N.W.2d 4], the contract provided payments "in lieu of vacation" which it referred to in one place as "a bonus in lieu of vacation" and other places as "compensation in lieu of vacation." It made no provision for taking vacation. The court held the payment to be a "bonus" and not "vacation with pay."

*Grobe* v. *Board of Review of Dept. of Labor* (1951), 409 Ill. 576 [101 N.E.2d 95], is not contrary to the above decisions. In the Grobe case the contract provided for vacation with pay, and that any employee who had not received his vacation during the year (the employer retained the right to fix vacation dates which must not interfere with plant operations) would receive vacation pay on the first Friday in December. In case a department closed down the employees would receive vacation pay immediately. This did not preclude an employee from requesting a vacation at some other time. The plant closed down to enable all employees to have vacations. Grobe contended that thereby he was involuntarily unemployed and entitled to unemployment compensation benefits and that his vacation pay was a bonus. The court held that the designated vacation period was voluntary unemployment provided for in the contract and that the contract itself designated his compensation as "pay" for that period and therefore it was "wages" under the Illinois act making receipt of wages a disqualification for unemployment compensation.

In *Hamlin* v. *Coolerator Co.* (1949), 227 Minn. 437 [35 N.W.2d 616], a previous contract between the employer and the union had provided that when an employee desired to forego his vacation " ' . . . said vacation shall be taken in the form of a bonus . . .' " The contract in effect at the time the employer shut down the plant to compel the employees to take their vacations, contained no such provision but did provide for vacation with pay. The court held that the payment for this period was not a bonus, but a "vacation allowance" which under the Minnesota act disqualified the employee from receiving unemployment compensation.

In *Kelly* v. *Administrator, Unemp. Comp. Act* (1950), 136 Conn. 482 [72 A.2d 54], the contract provided for vacations with pay to be taken at a time to be arranged between the employer and the employee. The company shut down the

plant to give all employees a vacation during the week of July 4th. The contract provided that the company might shut down during that week and if it did such week should be deemed a week of vacation. Because of receiving pay for this week the plaintiffs were denied unemployment compensation benefits under the Connecticut act.

There is no California case expressly discussing the situation concerning in lieu vacation pay. The nearest approach to a discussion is in *Jones* v. *California Emp. Stab. Com.*, *supra,* 120 Cal.App.2d 770. There the contract provided that all employees entitled to vacation with pay would within 30 days of May 1st receive "vacation pay," "regardless of when, during that year, they may elect to take time off." (P. 772.) They also had "the option of not taking time off during the succeeding 12 months." (P. 773.) Apparently all the parties assumed that this pay was "wages." The court without amplification says "it is obvious that the vacation pay which he received constituted wages and was not a gratuity." (P. 772.) Later there appears this significant language (p. 773): "Petitioner emphasizes the fact that an employee who is entitled to an annual vacation and receives a vacation paycheck following the computation date has the option of not taking time off during the succeeding 12 months. What the effect, if any, would be on the allocation of an employee's check for annual vacation pay if he elects not to take time off is not before us and has no bearing on the instant case since the agreement does not give an employee who is laid off because of lack of work *any option* relative to vacation or vacation pay. It simply provides that he shall be given pro rata 'vacation pay' computed as of the date of termination in the same manner as annual vacation pay." (Emphasis added.) Also the court said (p. 773): " . . . petitioner could not realize upon his vacation pay while he was earning it, *nor could he then take time off.*" (Emphasis added.) In view of this language, the assertion, without discussion, that the vacation pay there constituted wages, and the cases cited in the opinion which likewise did not discuss the option feature, it would appear that the attention of the court had not been called to the authorities which hold that where the contract gives the employee the in lieu option, vacation pay is not wages but a bonus.

In *Shand* v. *California Emp. Stab. Com., supra,* 124 Cal. App.2d 54, the court said (p. 57): "Although the right to vacation pay is earned by the employee's labor in a preceding

period the vacation pay is not allocable to that period *as the employee cannot at his choice take the pay during that period without taking vacation* (Jones case, *supra*, 120 Cal.App.2d p. 773.) The contract does not entitle the employees to a certain amount of extra pay independent of vacation, but only to 'vacation with pay' and this right of theirs is in no way impaired.'' (Emphasis added.) Thus the court was not considering the effect of a contract giving the employee a vacation pay in lieu option. Significantly, the decision holds not in point a certain decision of the California Unemployment Insurance Appeals Board because in the latter case ''the employees were according to their contract always entitled to a 'bonus in lieu of vacation pay' without taking any vacation. It was therefore held that such payment was a bonus fully earned in and allocable to the period during which the employee worked for it.'' (P. 57.)[6] There is a considerable difference between a situation where an employee can receive no pay in lieu of vacation unless his employment terminates and one where he has the option of working without vacation and receiving pay in lieu thereof. In the first instance normally he takes a vacation and receives his usual wages for the vacation period, so that at the end of a year's work he has received but 52 weeks' pay. In the second instance, if he exercises his option of taking no vacation he receives his 52 weeks' pay plus additional pay, depending upon the amount of vacation due him. This additional pay is not earned either in the sense that he is working beyond the time for which he has already been paid, or is pay for time off. In effect, it is a gratuity or bonus given for not taking time off. Being a bonus, it necessarily relates to the period in which it accrues and is payable during the year earned. The fact that his employment terminates does not change this situation. In such event he is entitled to his bonus immediately, and it cannot be allocated to subsequent

---

[6] In analyzing the Jones case, *supra*, it should be borne in mind that it was dealing *only* with unemployment compensation, and that section 9.2 disqualifies from that type of benefit any employee receiving ''wages'' which are defined in section 11 (a) (1) as ''All remuneration . . . including commissions and bonuses'' whereas the only disqualification from the receipt of disability benefits is ''regular wages'' as defined in section 261 (i) Adm. Code, herein discussed. In the Shand case, *supra*, the claim of McIver (a coplaintiff) was for disability benefits. However, the court, without considering section 208, treated the two claims, Shand for unemployment compensation and McIver for disability benefits, exactly the same, seeming to assume without discussion that the act also treated the two situations the same.

days. This is the holding in *Renown Stove Co.* v. *Michigan Unemp. Comp. Com.*, *supra*, 44 N.W.2d 1; *Hubbard* v. *Michigan Unemp. Comp. Com.*, *supra*, 44 N.W.2d. 4. While in *Jones* v. *California Emp. Stab. Com.*, 120 Cal.App. 770 [262 P.2d 91], *Shand* v. *California Emp. Stab. Com.*, 124 Cal. App.2d 54 [268 P.2d 193], *Hamlin* v. *Coolerator Co.*, 227 Minn. 437 [35 N.W.2d 616], *Grobe* v. *Board of Review of Dept. of Labor*, 409 Ill. 576 [101 N.E.2d 95], (all *supra*), it was held that under their respective contracts vacation pay on termination of employment should be allocated to the period following the termination, those cases are not in point for the reason that as heretofore shown they were not dealing with an in lieu vacation pay situation.

*Bennett* v. *Hix* (1953) —— W.Va. —— [79 S.E.2d 114], cited by defendants, dealt with a provision of the West Virginia Unemployment Compensation Act which provided, in effect, that a worker who is unemployed because of his request, or that of his agent, for vacation at a specified time and who receives vacation pay, is disqualified from receiving unemployment compensation benefits. It was held that those employees who made no request for vacation at that time, but were required to take it because the companies closed down for mass vacations, and who received partial or no vacation pay, were entitled to benefits. Those employees who either directly, or through their union, had requested vacations with pay at this particular time, were denied benefits. There is no similar provision in the California act, so the decision is not applicable here.

All of the cases we have discussed under either rule dealt with unemployment compensation benefits. None of them dealt with unemployment compensation disability benefits. We can see no reason, however, why those rules should not be applied in defining vacation pay and in lieu vacation pay in disability benefit cases.

Article 10 of the act, dealing with Unemployment Compensation Disability Benefits, was adopted in 1946. It was based upon the Rhode Island Temporary Disability Insurance Act, chapter 1200, Laws of 1942.[7] Originally that act provided ''wages is hereby declared to have the same definition as contained in the Unemployment Compensation Act, as amended'' (§ 2 (14).) But chapter 1367, Laws of 1943, amended that section to provide that disability benefits would

[7] See 2 Stan. L. Rev. 348; 22 Cal. State Bar Journal, 132.

not be denied because of receipt by the employee, under a previous employer and employee agreement, of regular wages, or parts thereof, during incapacitation. California did not accept this provision. On the contrary, section 208 as heretofore shown, provides that receipt of regular wages disqualifies. It would appear that if our Legislature intended the receipt of moneys other than "regular wages" to disqualify, it would have provided that the definition of wages should be the same as contained in the Unemployment Insurance Act, section 11 (a) (1), which defines them as "All remuneration payable for personal services . . . including commissions and bonuses . . ."

It is significant, too, that section 208 states "if he [an employee] *continues* to receive his regular wages, or any part thereof . . ." (Emphasis added.) It could hardly be said that in receiving vacation pay an employee is *continuing* to receive anything. Such pay is a payment made once or twice during a year and not a payment that continues to be made.

In view of the in lieu vacation pay option clause of the contract, the vacation pay received by plaintiffs did not constitute "regular wages" under section 208 of the act as defined in section 261(i), Administrative Code, and hence those plaintiffs receiving vacation pay were not thereby disqualified from receiving disability benefits.

### MAINTENANCE AND CURE

Both the Appeals Board and the court held that maintenance and cure constitutes "regular wages" under section 208 of the act and section 261(i) of title 22, Administrative Code. The bargaining agreement provides: "Crew members who are entitled to maintenance under the general maritime law doctrine of wages, maintenance and cure, on account of injury or illness incurred in the service of the ship, shall be paid maintenance at the rate of $6.00 per day."

Maintenance and cure is a right given seamen arising under the general maritime law, and goes back to ancient times. (*Aguilar* v. *Standard Oil Co.*, 318 U.S. 724 [63 S.Ct. 930, 87 L.Ed. 1107].) " . . . this obligation has been recognized consistently as an implied provision in contracts of marine employment." (*Idem.* p. 730.) Maintenance and cure is not wages. "Wages constituted one kind of the ship's obligation to the sailors. Maintenance is another kind." (*Agnew* v. *American President Lines* (U.S.C.A., 9th Cir., 1949) 177 F.2d 107, 110.) In *Newman* v. *United Fruit Co.*,

141 F.2d 191, it was held that under an act of Congress entitling a seaman to "wages and provisions" seamen who were improperly discharged while entitled to one month's wages were not entitled to maintenance also. State courts "must determine the rights of the parties under the maritime law as a 'system of law coextensive with, and operating uniformly in, the whole country.'" (*Intagliata* v. *Shipowners & Merchants etc. Co.*, 26 Cal.2d 365, 371 [159 P.2d 1].)

▆ Nor can maintenance and cure be considered "regular wages" as defined in section 261(i), Administrative Code. It is in no sense "a full or partial payment of his remuneration during a period of disability." It is a payment *because* of disability. Logically, maintenance and cure is not wages. Uniformly, wages are tied to some period of work, as hourly, weekly, etc. But maintenance and cure is unrelated to such criteria. Take the extreme example of an apprentice merchant seaman who is injured during his first hour of employment. He is entitled to full maintenance and cure benefits.

In *Harden* v. *Gordon*, 11 Fed.Cas. 480, Circuit Justice Story stated that seamen in case of sickness were entitled to be "healed at the expense of the ship" and that their right in that respect "constitutes, in contemplation of law, a part of the contract for wages, and is a material ingredient in the compensation for the labour and services of the seamen." (P. 481.) This was in 1823. The court was not considering the question in issue here, but the primary question of whether admiralty had jurisdiction of such a claim. For the purpose of giving admiralty jurisdiction, the claim was considered a part of the compensation due a seaman. But the later case of *Agnew* v. *American President Lines, supra,* 177 F.2d 107, considered the specific question. "It is further contended that because maintenance is part of the *compensation* to a sailor it is part of his *wages* . . . maintenance is due as an added part of the wage." (P. 110.) The case then definitely held that maintenance was not a part of wages. Both the Appeals Board and the trial court erred in holding maintenance and cure to be "regular wages."

However, it is contended that plaintiffs' right to benefits is denied by section 207(b) which provides in effect that the disabled employee is not entitled to benefits during such time as he shall receive with respect to his disability "benefits under *a workmen's compensation law, or employer's liability law* of this state, or of any other state, or *of the Federal Government* . . ." (Emphasis added.)

Are "maintenance and cure" benefits, then, received under a federal workmen's compensation or employer's liability law? In *Doucette* v. *Vincent* (1st Cir.), 194 F.2d 834, 838, it is said: "The right to maintenance and care [sic] is conferred by general maritime law, and general maritime law is not state law but a body of federal law. And under federal law the right is contractual in the sense that it is attached as an incident to, and has its origin in, the contract of employment." (P. 838.) As stated in *Aguilar* v. *Standard Oil Co., supra,* 318 U.S. 724, the right to maintenance and cure is a right given seamen under maritime law and if not written into the employment contract, is nevertheless implied therein.

*Owens* v. *Hammond Lbr. Co.* (Dis. Ct., N.D. Calif. S.D.), 8 F.Supp. 392, held that state workmen's compensation and federal maintenance and cure are substitutes for each other. In that case, the federal district court held that a seaman receiving California workmen's compensation is not eligible to receive maintenance. The court said at page 392: "The compensation award given by the laws of California is a substitute for either the admiralty indemnity or damages under the Jones Act, and includes the amounts recoverable under maintenance and cure. In fact, it is much closer in its theory to maintenance . . ."

In *Occidental Indem. Co.* v. *Industrial Acc. Com.,* 24 Cal.2d 310 [149 P.2d 841], it was held that a seaman suffering injuries arising out of his service on a ship has two remedies open to him: (1) "the ancient liability imposed by admiralty law upon shipowners for maintenance and cure" (p. 312), and (2) an action under the Jones Act. "The two foregoing remedies are each independent and cumulative of the other . . ." (p. 312.) The court then goes on to hold that generally the California workmen's compensation laws are not applicable to such a situation; that the two remedies above mentioned generally are exclusive of any rights under state laws. However, it refers to *Davis* v. *Department of Labor & Industries,* 317 U.S. 249 [63 S.Ct. 225, 87 L.Ed. 246] which held that there is a twilight zone in which a state's compensation laws could apply and "that the remedies provided by the Jones Act or the maritime law of cure and maintenance are exclusive of state laws *with the qualification* that there may be borderline cases where that is not true . . ." (p. 314.) It is doubtful whether there is a conflict between the district court's holding in the Owens case that a seaman

cannot recover maintenance and cure if he has received an award under the California workmen's compensation laws and the holding in the Occidental case above mentioned. In the Owens case the seaman was injured while his ship was in dock, which situation may have brought the case into the twilight zone above mentioned where the state could have jurisdiction. We are not concerned with that question. There is no conflict, however, between the two cases in the holding in the Owens case that workmen's compensation, where given, is, in effect, "a substitute for either the admiralty indemnity or damages under the Jones Act, and includes the amounts recoverable under maintenance and cure." (P. 392.) There is nothing in the Occidental case which conflicts with the following from the Owens case (p. 392) : "In a suit, either for indemnity in admiralty or under the Jones Act, all of the elements of loss recoverable under maintenance and cure are included in the damages, and, if a seaman recover on either of such causes of action, he may not recover in addition for maintenance and cure. If he fail to recover for indemnity or under the Jones Act, he may still recover for maintenance and cure . . ."

We are here concerned with the question of whether maintenance and cure is a benefit under an employer's liability law of the federal government. California in enacting its unemployment benefit laws has the right to determine who shall be entitled to receive benefits. Here, it has said that persons receiving benefits under workmen's compensation or employer's liability laws of either state or federal government shall not receive disability benefits, or if the latter would be greater than the former the disability benefits shall be reduced *pro tanto*. There is no conflict between the state and the federal government involved. The only question is whether maintenance and cure is paid under either a federal workmen's compensation or employer's liability law.

There is no element of workmen's compensation in it. ■ As pointed out, maintenance and cure is in nowise a statutory obligation of the employer but is a common law liability. While in a sense it is the payment of a liability by an employer, it is not paid under what is commonly considered an employer's liability law.

■ It is a general law of statutory construction that where an act of the Legislature refers to "laws," the expression will be held to refer to statute law, rather than to the common law, unless the context requires a different construction. In

*Southern Bell Tel. & Tel. Co.* v. *Beach* (1911), 8 Ga.App. 720 [70 S.E. 137], the Georgia statute provided for attorney's fees in actions for damages for injury due to the failure of a common carrier to perform any act required by "any law" of the state. Referring to the act which the telephone company had failed to perform, the court said, "In a broad sense, it was a violation of the law of the state of Georgia, for the common law is a part of the law of the state of Georgia . . ." The court then referred to the rule of statutory construction above mentioned and pointed out that in *Brinckerhoff* v. *Bostwick*, 99 N.Y. 654 [1 N.E. 663], "it is held that expressions in statutes, such as 'required by law,' 'prescribed by law,' 'regulated by law' " etc., refer to statutory provisions only; and the expression "liability created by law," as used in the Code of Civil Procedure, was held to refer only to statutory liability, and not to liabilities recognized by the general law. Constitutional provisions that the attorney general shall perform such duties as may be prescribed by "law" means statute law. (*State ex rel. McKittrick* v. *Missouri Public Service Com.*, 352 Mo. 29 [175 S.W.2d 857]; *Shute* v. *Frohmiller*, 53 Ariz. 483 [90 P.2d 998].)

The constitutional provision that no act shall be passed which shall provide that any existing "law" shall be applicable except by inserting it in such act, refers to other statute law. (*State* v. *Masnik*, 123 N.J.L. 335 [8 A.2d 701].)

The word "laws" as used in the federal statute denouncing conspiracies to commit offenses against the laws of the United States means statutory laws. (*United States* v. *Thomas*, 145 F. 74, 79.) "Law," as used in a statute relating to things "exempt from attachment by law" means exempt by statute. (*In re Keene*, 15 R.I. 294 [3 A. 418, 419]. See also 24 Words and Phrases, 334 et seq., and 1954 Cumulative Annual Pocket Part, vol. 24, p. 115.)

While in a broad sense the payment of maintenance and cure is an employer's liability, there is nothing in the context of section 207(b) which would require an application of anything but the general rule in interpreting the section. Particularly is this so as "workmen's compensation law" is coupled with "employer's liability law." There never was any workmen's compensation at common law, nor in the strict sense was there any employer's liability. When one uses either of these terms, "workmen's compensation law," "employer's liability law," one thinks only of statutory law. In interpreting section 207(b) section 11 (c) (2) should be

borne in mind. It excludes from the definition of "wages" which bar an employee from receiving unemployment compensation benefits "The amount of any payment made to, or on behalf of, an employee under a plan or system established by an employer which makes provision for his employees . . . on account of . . . sickness or accident disability . . ." Surely, unless the context requires it, this court should not read into section 207(b) a disqualification from receiving disability benefits which would not be a disqualification as to unemployment compensation benefits. ▆ We hold that section 207(b) does not apply in this case.

It is obvious that the writ of mandate should have issued. The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 4, 1955, and respondents' petition for a hearing by the Supreme Court was denied March 3, 1955. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.