[Civ. No. 24874. Second Dist., Div. One. Apr. 6, 1961.]

WILLIAM L. BARRETT et al., Appellants, v. CALIFOR-
NIA UNEMPLOYMENT INSURANCE APPEALS
BOARD et al., Respondents.

Levy, Russell, DeRoy & Geffner and Leo Geffner for Appellants.

Stanley Mosk, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondents.

LILLIE, J.—Petitioners, four in number, unsuccessfully sought payment of disability benefits under section 2656 of the Unemployment Insurance Code.[1] They appeal from a judgment (denying a peremptory writ of mandate) which sustained the action of the respondent board.

The background facts are without dispute. Petitioners were employed by North American Aviation Company; while so employed they became ill and unable to work. At all times pertinent there was a collective bargaining agreement between North American and the union to which petitioners belonged. The applicable provisions of the agreement are as follows: "4. Sick leave allowance. (a) Employees on the hourly pay-roll completing one (1) year of continuous service as defined in Section 1(a) hereof, will become eligible for forty (40) hours of sick leave pay computed at the employee's basic hourly rate in effect on the employee's anniversary date. Payment for sick leave allowance shall be made to the employee at the same time vacation allowance is paid. (b) Time taken as sick leave shall not be considered as hours or days worked in determining premium pay in any work week." Section 1(a), *supra,* defines an employee's anniversary date as "the date upon which the employee has completed a year of continuous service since his most recent date of hire or since the date on which the employee last became eligible for vacation and sick leave allowance . . ." At the time of his illness each petitioner had completed at least one year of continuous service; subsequent to the last anniversary date prior to his illness each petitioner had received a sick-leave allowance which, together with an allowance for vacation, was paid in one lump sum. None of the petitioners had been ill between their "anniversary date" and the dates of the illness here involved.

The Department of Employment and the respondent board, upon review of the respective claims, determined that each petitioner had received "wages or regular wages" (Unemp.

---

[1]Section 2656 reads as follows: "An individual eligible to receive disability benefits who receives wages or regular wages from his employer during the period of his disability shall be paid disability benefits for any day in an amount not to exceed his maximum daily amount which together with the wages or regular wages does not exceed for such day one-seventh of his weekly wage immediately prior to the commencement of his disability."

Ins. Code, § 2656) for his illness and therefore was ineligible for disability benefits; furnished with a transcript of the proceedings, the trial court found that in each case the decision of respondent board was "supported by substantial evidence in the light of the whole record" and "supported by the weight of the evidence" (Code Civ. Proc., § 1094.5) and was "in accordance with the applicable law."

The purpose of disability compensation, as both sides point out, is "to compensate in part for the wage loss sustained by individuals unemployed because of sickness or injury and to reduce to a minimum the suffering caused by unemployment resulting therefrom . . ." (Unemp. Ins. Code, § 2601). Concededly each petitioner was disabled during the periods in controversy, but disability is not the only factor which warrants the payment of benefits under the act; thus, an applicant, though disabled, is ineligible for benefits if he is receiving unemployment compensation (Unemp. Ins. Code, § 2628) and if he is receiving or is entitled to workmen's compensation benefits (Unemp. Ins. Code, § 2629). An applicant may also become ineligible if he "receives wages or regular wages from his employer during the period of his disability" (Unemp. Ins. Code, § 2656, *supra*) to the extent in that statute provided. The respondents applied the provisions of section 2601, California Administrative Code in their resolution of the instant controversy; that section defines "Regular Wages" as the term is used in section 2656 as "compensation paid entirely by an employer directly to his employee as a full or partial payment of his remuneration during the period of disability."

Basically, petitioners contend that the sick leave allowance should be classified as a bonus and not "wages or regular wages" within the meaning of section 2656; in the alternative, it is urged that such payments, even if regarded as wages, should not be allocated prospectively to the period following the anniversary date—hence, they were not made "during the period of disability" as provided in the statute (§ 2656). A liberal construction of the applicable legislation in favor of the employee is said to support these contentions.

Whether the allowance be one for vacation or sick leave, it seems conceded that we must look to the provisions of the collective bargaining agreement to determine eligibility for benefits. (*Bradshaw* v. *California Emp. Stab. Com.*, 46 Cal.2d 608 [297 P.2d 970]; *Jones* v. *California Emp. Stab. Com.*, 120 Cal.App.2d 770 [262 P.2d 91].) For administrative con-

venience, the vacation and sick-leave allowances were paid, as already mentioned, in one lump sum—section 5 of article XVIII of the agreement provides that payment for vacation "shall be made as soon as practical after the employee's anniversary date." There was testimony that prior to the current contract (and under a prior agreement) the employer followed the practice of crediting a week's sick leave to the employee's account on his anniversary date from which he would be paid if he took sick leave and from which, on the *next* anniversary date, he would receive the unused portion (if any) of such allowance; shortly after World War II "a change in procedure was negotiated with the union whereby the vacation and sick leave allowance would be paid to the employee as a payment at the completion of the first year in anticipation of his absences for either reason during the ensuing year . . ." The same witness, the company's director of labor relations, testified that this change was taken "at the initiative of the company in collective bargaining with the union." The following questions were then propounded and the following answers given: "A. When an individual takes a vacation, does he receive any pay at that time? A. No, he has already received his pay. Q. And that payment was made in anticipation of vacation he was going to take? A. That's correct. Q. Now, if he had—is sick, does he receive any wages from the company at that time? A. No. Q. That having been considered to be paid on his anniversary date? A. That's correct." In answer to similar questions by petitioner's counsel, the witness stated that sick-leave allowance "is paid in anticipation of the absences which will occur during the ensuing year." No contrary testimony was produced by the petitioners; hence, the obvious intent of the parties as to the prospective nature of the sick leave allowance becomes substantially manifest.

In addition to long acquiescence by the parties in the prospective nature of the allowance, the language of section 4(a), quoted earlier, would also seem to support the interpretation adopted by respondent board. Therein it is declared that an employee completing one year of continuous service "*will* become eligible for forty (40) hours of sick leave pay . . ." (emphasis added) ; in other words, until the yearly anniversary the employee is not even eligible for sick leave pay. As stated in *Jones* v. *California Emp. Stab. Com.*, *supra*, 120 Cal.App.2d 770, 772, which involved a collective

bargaining agreement for vacation pay: "Certainly the parties who negotiated this agreement must have understood it. . . . The services rendered during the previous year simply lay the foundation for the vacation pay and the opportunity to take time off during the following year. It is clear the parties did not intend that vacation pay should be allocated to the period in which the services were rendered or that such benefits should be received during that period. The entire pattern for vacation benefits under the agreement looks to the future. It contemplates that such benefits will be earned during one period but will be received and enjoyed during a later period." The above reasoning is peculiarly pertinent to the present controversy in the light of the fact that in many particulars of the agreement vacation and sick leave allowance are treated alike; thus, both are given only after one full year of continuous service and both are based on the same salary scale; also, the time of payment is the same as are the proration conditions.

Moreover, as a matter of fairness to claimants similarly situated, and in the interest of administrative convenience, it would further appear that the payments in question should be considered prospective. For example, if the Department of Employment considered a sick-leave payment on March 1, 1959, as covering a 1958 illness, one of two choices would have to be made: (1) Disqualify the claimant for a one-week period because on the following March he will acquire a right to be compensated for such illness, or (2) pay him for a period because he does not yet have a right to the vested money. If (1) were followed, the employee might quit or be discharged before his anniversary date—he would thus receive neither regular wages from his employer nor benefits from the disability fund established under the act; (2) would result in payments from both the employer and from the disability fund, a policy which is contrary to judicial pronouncements on the subject: "The policy against duplication of payments should not be thwarted by any so-called liberal construction of the act, especially when such construction is not justified by the language of the contract. Unemployment insurance was not intended to protect employees already protected for the same period by their private contracts." (*Bradshaw* v. *California Emp. Stab. Com., supra.*, 46 Cal.2d 608, 611.)

It is argued that the position taken below is unfair because the employee is not eligible for any sick-leave benefits at all during the first year and, unless there is hospitalization,

no employee is eligible for disability benefits during the first week of disability (Unemp. Ins. Code, § 2627) ; for example, if an employee is sick for one week during the first year of employment, he would receive only one week of sick-leave allowance from the employer and none from the disability fund. Unless there is hospitalization, no benefits are available from the disability fund for a period of one week regardless of the payment or otherwise of "regular wages." We must take the law as we find it—if an employee has several separate illnesses during a given year, he is not eligible for benefits; if he has an illness that lasts two weeks he is eligible.

In support of both positions taken on this appeal, petitioners rely heavily on *Gilliam* v. *California Emp. Stab. Com.*, 130 Cal.App.2d 102 [278 P.2d 528]. There the applicants were seamen who, under a collective bargaining agreement, had an option to take pay in lieu of vacation. They were terminated as a result of illness. The question arose whether they were ineligible for disability benefits because they had received such "in lieu" payments. The present case differs from *Gilliam* in the following respects : First, the present employees were not terminated ; second, there was no "in lieu" payment in the agreement between the company and the union ; and third, the lump-sum payments were sick-leave payments. The third distinguishing factor is particularly important because of a change in the statute. At the time *Gilliam* was decided, section 208 (now § 2656) of the Unemployment Insurance Code read as follows : "No individual shall be paid unemployment compensation disability benefits with respect to any week if he continues to receive his *regular* wages . . ." (emphasis added), the statute (Unemp. Ins. Code, § 2656) now reads : "An individual eligible to receive disability benefits who receives *wages or regular wages* from his employer during the period of his disability . . ." (emphasis added). Neither vacation benefits nor "in lieu" vacation benefits would quality as "regular wages"; only sick benefits would so qualify, and there were no sick-leave benefits in *Gilliam*. The first of the two remaining distinctions is also important ; in *Gilliam* the employees received "in lieu" vacation benefits, and at the time of payment it was already established that the employees would not take vacations ; accordingly the "in lieu" payments could not be allocated to a future vacation period.

Petitioners also rely on an annotation in 30 American Law Reports 2d 372 for the proposition that if the employees have

the option to accept a specified amount or to take a vacation, then such payment must be regarded as a bonus. The general rule is stated at page 368 of the same annotation: ". . . even though one is unemployed during certain weeks, he is not entitled to unemployment benefits for those weeks if he is receiving, has received, or is eligible for compensation in the nature of vacation pay for such weeks"; and at pages 372 and 373 it is stated that if the employee does not want a vacation or in fact declines a vacation and under the bargaining agreement can and does receive payment in lieu thereof, then such payment shall be regarded as a bonus. Here, the employees had no such option as to their vacation and the same is true of their sick leave. They received sick-leave payments for prospective sick leave and in fact took such sick leave.

Finally, it is suggested by petitioners that the principle of liberal construction is even more applicable here because contributions to the disability fund are made by the employee as contrasted with the unemployment aspects of the act; we are asked, therefore, to apply the familiar rule governing suits to collect benefits under the average insurance policy. The chief difficulty with such argument is that the fund is held in trust for administration by the director of the department (Unemp. Ins. Co., § 3001); it would obviously be unfair to other employees whose contributions depend in the long run upon payments from the fund to allow petitioners to collect both wages and disability benefits for the same period.

■■ In a mandamus proceeding such as this, wherein a decision of an agency with statewide jurisdiction is reviewed, the trial court is authorized to exercise its independent judgment on the facts (*Ashdown* v. *State of California Dept. of Emp.*, 135 Cal.App.2d 291, 299 [287 P.2d 176]); furthermore, although questions of law are subject to judicial review, administrative interpretations of the act will be followed unless they are clearly erroneous. (*Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 325 [109 P.2d 935].) In our opinion, the respondent board and the trial court correctly construed the agreement and the governing legislation in the light of the record presented to us for review.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 31, 1961.