Zelma C. CARTER, Annie J. Clements, Billie F. Collie, Oliver D. Ervin, Velma F. Graham, Mildred A. Lusk, Dorothy D. Mann, Joe M. Marler, Frank Smith, and John Lee Stach, Plaintiffs in Error,

v.

The BOARD OF REVIEW UNDER OKLAHOMA EMPLOYMENT SECURITY ACT, Oklahoma Employment Security Commission and Douglas Aircraft Company, Inc., a corporation, Defendants in Error.

No. 37811.

Supreme Court of Oklahoma.

March 18, 1958.

Dyer, Powers & Gotcher, James D. Bass, Tulsa, for plaintiffs in error.

Homer L. Hurt and Roy W. Riegle, Jr., Tulsa, for Douglas Aircraft Co., Inc.

Burton Duncan and Milton R. Elliott, Oklahoma City, for Oklahoma Employment Security Commission.

WILLIAMS, Justice.

This case arises under the Oklahoma Employment Security Act, 40 O.S.1951 sec. 211 et seq., and is an appeal by Zelma C. Carter and others, hereinafter referred to as claimants, from a judgment of the District Court of Tulsa County which upheld or approved a decision of the Board of Review holding that claimants were not unemployed during certain periods immediately following the termination of their employment and that consequently they were ineligible for unemployment compensation during said periods.

Claimants were all employees of Douglas Aircraft Company whose services had been terminated by Douglas between April 6 and April 27, 1956. Pursuant to the collective bargaining agreement between the Union and Douglas, each claimant, upon being discharged, was paid the full salary or wages due him and in addition received a further sum designated as "vacation pay", and some of them received a further sum designated as "sick leave pay". Immediately following their discharge, claimants all filed applications with the Oklahoma Employment Security Commission for unemployment compensation under the provisions of the Oklahoma Employment Security Act, supra. Such Commission held that claimants were not unemployed for the period immediately following their respective discharges, finding that the vacation pay and sick leave pay received by them were wages under said Act, and that such wages were paid with respect to the week or weeks immediately following the discharges; that such pay should be apportioned out to said period immediately following the discharges on a weekly basis of the regular weekly wages, computed at the hourly wage rate for 40 hours per week; that claimants could not be eligible for benefits until after exhaustion of the time for which said pay was apportioned. Under said holding a few of the claimants were disqualified from receiving unemployment compensation for one week, most of them were disqualified for two weeks and a few of them were disqualified for three weeks, depending in each case upon the amount of vacation pay and sick leave pay which they had received when discharged. All of the claimants were paid unemployment compensation after the expiration of the disqualification period if they continued to be unemployed and filed claims, and the controversy relates only to the one, two or three week period during which each claimant was held to be disqualified by virtue of having received vacation pay and sick leave pay.

40 O.S.1951 sec. 214, as amended by Laws 1953, p. 142, sec. 3, provides in effect that an unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that he has filed a claim therefor; that he has registered for work at the employment office; that he is able and available for work; that he has been unemployed for a waiting period of one week; and that he has earned certain wages in the past. 40 O.S.1951 sec. 229(j) as amended by Laws 1955, p. 242, § 1, defines "unemployment" as follows:

"An individual shall be deemed 'unemployed' with respect to any week during which he performed no services and with respect to which no wages are payable to him, or with respect to any week of less than full-time work if the wages are payable to him, or with respect to such week are less than his weekly benefit amount plus Seven Dollars ($7.00)."

Sub-section (l) of the same section defines the term "wages" as follows:

" 'Wages' means all remuneration for services from whatever source, including commissions and bonuses and

the cash value of all remuneration in any medium other than cash. Gratuities customarily received by an individual in the course of his work from persons other than his employing unit shall be treated as wages received from his employing unit. The reasonable cash value of remuneration in any medium other than cash, and the reasonable amount of gratuities, shall be estimated and determined in accordance with rules prescribed by the Commission; provided that the term 'wages' shall not include: * * *

"(4) Dismissal payments after December 31, 1939, which the employing unit is not legally required to make by law or contract."

Admittedly, no services were rendered by claimants for Douglas during the period immediately following the dates of their respective discharges, but claimants did receive wages, for we think it is obvious that the vacation pay and sick leave pay which they received constituted wages and were not gratuities. Such payments were required by the terms of the collective bargaining agreement negotiated between the labor union and Douglas, and therefore do not fall under exception (4) of the statute above quoted as dismissal payments which the employing unit was not legally required to make by law or contract. The question is, however, whether such wages were payable "with respect to" the period immediately following separation from employment. If said wages were not paid "with respect to" such period in question, then claimants were unemployed during such period and consequently were entitled to unemployment compensation therefor, but if such wages were paid "with respect to" such period, then claimants were not unemployed during the period in question and were not entitled to unemployment compensation therefor.

Under the terms of the collective bargaining agreement above referred to, employees of Douglas who have completed at least six months of employment with the company are entitled to a certain amount of vacation with pay, and employees who have completed at least one year of employment with the company are entitled to a certain amount of sick leave with pay. In other words, they are entitled to receive pay for certain periods of time during which they render no services. Instead of merely continuing to pay the wages of an employee who is on authorized vacation or sick leave, Douglas follows a plan prescribed by the collective bargaining agreement under which the amount of annual vacation pay and sick leave pay for all eligible employees is calculated as of the same date, to-wit, the Sunday immediately prior to May 1 of each year. This is known as the "computation date". The employees are all given their checks for vacation pay and sick leave pay at one time which must be within thirty days after the computation date, regardless of when, during the year, they may elect to take time off. This vacation pay is for a vacation period to be taken by the employee, if production requirements permit him to take time off and he elects to do so, during the twelve months following the computation date. Sick leave pay is likewise for sick leave to be taken by the employee, if needed, during the twelve months following the computation date. Vacation pay is in effect figured at 4% of an employee's gross earnings during the year preceding the computation date, and sick leave pay is in effect figured at 2% of an employee's gross earnings during the year preceding the computation date.

If, however, an employee is discharged "through no fault or desire of his own," as was true in the instant case, he does not lose the vacation benefits and sick leave benefits which have been accumulating since the last computation date. Rather, he receives his pro rata vacation pay, namely, 4% of his earnings since the last computation date, and, if eligible, his pro rata sick leave pay, figured at 2% of his earnings since the last computation date, at the time of his discharge. Employees who quit voluntarily or who are

discharged for cause, do not receive pro rata vacation pay or sick leave pay.

■ The exact question presented by the case at bar was before the California Court in the case of Jones v. California Employment Stabilization Commission, 120 Cal.App.2d 770, 262 P.2d 91, which case involved the same employer, the same Union, and identical statutory and contractual provisions as the case at bar, as is shown for the most part by the first paragraph of the opinion therein, which is as follows:

> "Petitioner was employed by Douglas Aircraft Company under a collective bargaining agreement between the Company and the Union. His services were terminated by Douglas on June 7, 1950, because of lack of work. The following day he registered with the Department of Employment for work and filed a claim for benefits under the California Unemployment Insurance Act. 3 Deering's General Laws, Act 8780d. The next day the Department of Employment ruled petitioner was ineligible for such benefits for June 8 and 9 upon the ground that he was not unemployed on those two days within the meaning of the act in that he was entitled to receive pro rata vacation pay from Douglas in the amount of $18.41, which was the equivalent of his wages for 12.6 hours of work at his hourly rate when he was laid off."

In a lengthy and well reasoned opinion, the California Court held, in substance, that pro rata vacation pay, to which an employee laid off through no fault or desire of his own, was entitled under a collective bargaining agreement at a rate of specified percentage of earnings since the last preceding annual computation date, constituted wages payable with respect to the period commencing immediately upon the termination of employment and continuing until the vacation pay had been used up at his current hourly wage, and hence during such period he was not "unemployed" within the meaning of the Un-

employment Insurance Act and was ineligible for unemployment benefits.

■ Claimants admit the pertinence of the case of Jones v. California Employment Stabilization Commission, supra, but insist that the reasoning behind the court's decision in that case is poor and should not be applied to the case at bar. They cite no pertinent case to the contrary, however, and we are not persuaded that the California Court's opinion is anything other than logical and reasonable. Claimants make the same contentions in the case at bar as were made in the Jones case, supra, and we regard the opinion in that case as sufficient answer to all such contentions. Furthermore, when the claimants in the case at bar made application for unemployment compensation, each of them made a statement in support of such application in which the amount of vacation pay and sick leave pay received at the time of discharge was specified, and in most of such statements the period immediately following the date of discharge was specified as being the period for which such vacation pay and sick leave pay was received. Typical of such statements is the statement of claimant Clements, which is as follows:

> "I was separated from Douglas Aircraft in Tulsa, Oklahoma, on April 6, 1956. I was paid vacation pay and sick leave pay in the amount of $122.70 through April 21, 1956. Half of that amount would be for the week ending 4–14–56 and the other half for the week ending 4–21–56. This vacation and sick pay was under the terms of written contract."

In view of the fact that most of the claimants specified in their applications that the sick leave pay and vacation pay received by them was for the period immediately following the termination of their employment, and the fact that the employer likewise states that it was paid for such weeks, we do not see how the Commission could have logically allocated such payments to any other period of time than the period immediately following the

discharge of the claimants. The Board of Review found as a matter of fact that the vacation pay and sick leave pay was paid for the weeks immediately following the discharge, and this finding is amply supported by the record. In fact there is no evidence that it was for any other period. In a proceeding by an unemployed person to secure benefits under the Oklahoma Employment Security Act, the burden of proof to establish the claimant's rights to benefits rests upon the claimant, and the findings of the Board of Review as to facts, if supported by evidence, in the absence of fraud, are conclusive and the jurisdiction of the Court is confined to questions of law. Copeland v. Oklahoma Employment Security Commission, 197 Okl. 429, 172 P.2d 420.

Claimants make two further contentions which must be noticed. They assert that as to sick leave payments, such were clearly not paid with respect to any period following the time of their payment, because said payments are made in the form of reimbursement for possible loss of time due to sickness during the previous year and could not under any theory be construed to have been paid with respect to future loss of time. Such assertion is based on an erroneous statement of fact, however. Clearly, under the provisions of the collective bargaining agreement above referred to, all sick leave pay is made in the form of reimbursement for possible loss of time due to sickness in the future and is in no event made as reimbursement for loss of time due to sickness during the past year. In connection with the same contention, claimants also assert that 40 O.S.1951 sec. 229(*l*) (2) specifically provides that sick leave pay shall not constitute wages. Such statement is likewise erroneous. The cited statute obviously deals with the cost of a plan or system under which benefits are paid to employees in the event of their retirement, sickness, accidental disability, or death, and has the effect of relieving the employer from the payment of taxes into the unemployment compensation fund on the amounts so expended. It has no application whatsoever to sick leave pay such as is involved in the case at bar.

As their last contention, claimants assert that the passage of House Bill 1014 by the Legislature during the 1957 session is an expression of legislative intent that vacation and sick leave payments should not disqualify the claimants herein. House Bill 1014 was passed by the twenty-sixth legislature, but was vetoed by the Governor, and never became law. The passage of such bill was merely an unsuccessful attempt to change the law, and could have no possible bearing on the outcome of the case at bar.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and CARLILE, JJ., concur.